

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2004

# Crews v. Horn

Precedential or Non-Precedential: Precedential

Docket No. 99-9008P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Crews v. Horn" (2004). *2004 Decisions*. Paper 896.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/896

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 99-9008

_____

PAUL D. CREWS,
                    Appellant

v.

MARTIN HORN, Commissioner,
Pennsylvania Department of Corrections;
PHILLIP JOHNSON, Superintendent of
the State Correctional Institution at
Greene; JOSEPH MAZURKIEWICZ,
Superintendent of the State Correctional
Institution at Rockview;
PENNSYLVANIA ATTORNEY
GENERAL

_____

Appeal from the United States District
Court for the Middle District of
Pennsylvania
(D.C. Civil Action No.98-cv-01464)
District Judge: Hon. A. Richard Caputo

_____

Argued on February 27, 2003

Before: ALITO, ROTH AND BARRY,
Circuit Judges

(Opinion filed: March 4, 2004)

David W. Wycoff (Argued)
Matthew C. Lawry
Anne L. Saunders
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA 19106

Attorneys for Appellant

Daniel Stern (Argued)
Assistant District Attorney of Perry
County
2650 North 3rd Street
Harrisburg, PA 17110

Attorney for Appellees
_____

OPINION
_____

ROTH, Circuit Judge

Petitioner Paul David Crews, who faces a death sentence for a double-murder, appeals the dismissal without prejudice of his petition for a writ of habeas corpus. Crews concedes that the petition is a mixed petition (*i.e.*, it contains both exhausted and unexhausted claims), so that the District Court lacks the power to grant relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(b)(1). However, he argues that, instead of dismissing the petition without prejudice, the District Court should hold it in abeyance while he attempts to exhaust his unexhausted claims in state court. He contends that dismissing the petition

without prejudice has created the possibility that he will be time-barred under AEDPA from returning to federal court after his attempt to exhaust his unexhausted claims, even though his initial habeas petition was timely under AEDPA. We agree with Crews and will reverse the District Court's dismissal of the petition and remand it to the District Court.

## I. Facts and Procedural History

The following facts, which are not in dispute, are drawn from the Pennsylvania Supreme Court's decision in *Commonwealth v. Crews*, 640 A.2d 395 (Pa. 1994).

On September 13, 1990, two hikers, Geoffrey Hood and Molly LaRue, were killed at an overnight shelter on the Appalachian Trail in Perry County, Pennsylvania. LaRue was bound, raped, and stabbed. She died approximately fifteen minutes after receiving a knife wound to the neck. Hood, her boyfriend, died five to eight minutes after being shot three times with a revolver. A week after the killings, Crews was arrested.

At trial, witnesses testified that two days before the murders, Crews visited a library in East Berlin, Pennsylvania, seeking a map of the Appalachian Trail. Closer to the trail, Crews asked other hikers for directions to the trail. Other witnesses observed him heading south on the trail after the killings, wearing gear that belonged to the victims. When arrested, Crews possessed numerous personal articles that belonged to the victims. The police also found in Crews' possession, a handgun, which a ballistics expert testified was the handgun that killed Hood, and a knife with blood on it. The blood on the knife matched LaRue's blood type. Other witnesses identified objects found at the murder scene and along the trail south of the murder scene as belonging to, or resembling property owned by, Crews.

FBI DNA expert Dr. Deadman testified that Crews' DNA patterns matched the DNA patterns of semen samples obtained from LaRue's vagina in three of four genetic loci. He did not testify as to the statistical probability that such a match could occur by chance. Crews' expert, Dr. Acton, criticized any conclusion reached without a statement of the probability that the match occurred by chance. The jury found Crews guilty on two counts of first degree murder, and the trial proceeded to the capital sentencing phase.

During the capital sentencing phase, a physician for the prosecution testified that LaRue's hands had been tied before she was killed. Crews presented evidence that he had no prior convictions. He also presented his employer, who testified about Crews' work experience and drinking habits. Finally, he presented a psychiatrist, who testified that Crews had a schizoid personality and suffered from an organic aggressive syndrome aggravated on the day of the killings by alcohol and cocaine.

The trial judge instructed the jury that the potential aggravating circumstances pertaining to Hood's murder were that the killing occurred during the perpetration of a robbery, there was a grave risk of death to another, and Crews was convicted of another murder. In the LaRue murder, the aggravating circumstances submitted to the jury were that the killing occurred during the perpetration of a rape, the killing was committed by torture, and Crews was convicted of another murder. The mitigating circumstances submitted to the jury regarding both killings were that Crews did not have any prior convictions, he was under extreme mental or emotional disturbance, his capacity to appreciate or conform his conduct was substantially impaired, he acted under extreme duress, and any other mitigating evidence concerning petitioner's character and record or the circumstances of his offense that the jury considered relevant.

The jury found two aggravating circumstances in the Hood murder (grave risk of death to another and conviction of another murder) and all three aggravating circumstances in the LaRue murder. In both murders, the jury found that aggravating circumstances outweighed any mitigating ones and returned verdicts of death. The court immediately sentenced petitioner to two consecutive death sentences.

Following his conviction and sentence, Crews appealed. The Pennsylvania Supreme Court affirmed his conviction on April 21, 1994. *Crews*, 640 A.2d at 395. Crews' motion for reargument was denied on May 31, 1994, and he did not petition the United States Supreme Court for a writ of *certiorari*.

On January 13, 1997, Crews filed his first petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. § 9541, *et seq*. The Court of Common Pleas dismissed the petition, and the Pennsylvania Supreme Court affirmed on August 20, 1998. *Commonwealth v. Crews*, 717 A.2d 487 (Pa. 1998). Crews did not seek reargument in the Pennsylvania Supreme Court or petition the United States Supreme Court for a writ of *certiorari*.

On September 2, 1998, Crews filed a document entitled "Motion for a Stay of Execution and Request for Appointment of Counsel under 28 U.S.C. § 2251, 21 U.S.C. § 848(q), and *McFarland v. Scott* and request for *in Forma Pauperis* Status" in the United States District Court for the Middle District of Pennsylvania. On September 24, 1998, the District Court granted Crews *in forma pauperis* status, appointed counsel, denied Crews' motion for a stay of execution based on the Commonwealth's representation that a death warrant would not issue, and ordered Crews to file a habeas petition by March 15, 1999. In compliance with this order, Crews filed a habeas petition on March 15, 1999. On November 17, 1999, the District Court determined that the habeas petition

3

was a mixed petition, dismissed it without prejudice to allow exhaustion, and denied a Certificate of Appealability. Crews appealed the dismissal, and we granted a Certificate of Appealability on April 25, 2002.

On February 18, 1999, while his habeas corpus petition was pending before the District Court, Crews filed a second PCRA petition in the Court of Common Pleas, raising the unexhausted claims. On August 28, 2002, the Court of Common Pleas granted the Commonwealth's motion to dismiss the second PCRA petition as untimely. That ruling is currently on appeal.

## II. Jurisdiction and Standards of Review

The District Court had jurisdiction over this habeas corpus petition pursuant to 28 U.S.C. § 2254(a). We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253. We exercise plenary review over statute of limitations issues. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001). Whether a district court has the power to stay a habeas petition is a question of law, and thus review is plenary. *See United States v. Higgins*, 967 F.2d 841, 844 (3d Cir. 1992). While we have not addressed the standard of review for a district court's decision to dismiss a mixed petition rather than to grant a stay, as we discuss below, we now adopt an abuse of discretion standard. However, for the reasons we state below, in view of the time limitations imposed by the AEDPA, where outright

dismissal "could jeopardize the timeliness of a collateral attack," a district court would abuse that discretion if it were not to offer to the petitioner the opportunity of staying, rather than dismissing, the petition. *See Zarvela v. Artuz*, 254 F.3d 374, 382 (2d Cir.), *cert. denied*, 534 U.S. 1015 (2001).

## III. Discussion

AEDPA requires a state prisoner to file a petition for federal habeas corpus relief within one year of the occurrence of several events, the only event relevant to this appeal being "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d). The purpose of this requirement is to further the interest in finality of state court judgments by ensuring rapid federal review of constitutional challenges. *See Woodford v. Garceau*, 123 S.Ct. 1398 (2003); *Duncan v. Walker*, 533 U.S. 167, 179 (2001). Since Crews' conviction became final prior to April 24, 1996, the effective date of AEDPA, he had a one-year grace period, until April 23, 1997, to file his habeas corpus petitions. *See Nara v. Frank*, 264 F.3d 310, 315 (3d Cir. 2001).

Under AEDPA's statutory tolling provision, the limitations period is tolled for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . .." 28 U.S.C. § 2244(d)(2). It is

4

undisputed that Crews qualifies for statutory tolling for the period from January 13, 1997, to August 20, 1998, because his properly filed first PCRA Petition was pending during this period.[1] Since 264 days of Crews' limitations period passed prior to the filing of his first PCRA petition, he had 101 days following the Pennsylvania Supreme Court's denial of his first PCRA petition, or until November 30, 1998, to file his petition for a writ of habeas corpus. He satisfied this deadline by filing his September 2, 1998, application, in response to which the District Court granted him an extension

until March 15, 1999, to file his habeas corpus petition.[2] He filed his habeas corpus petition on March 15, 1999. Thus, his habeas corpus petition was timely.

The petition, however, is a mixed one. Under AEDPA, subject to certain exceptions, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . .." 28 U.S.C. § 2254(b)(1). This exhaustion rule promotes "comity in that it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the

---

[1]Crews did not move for reconsideration of the denial of his first PCRA petition in the Pennsylvania Supreme Court, or petition the United States Supreme Court for a writ of *certiorari*. Therefore, there is no issue as to whether AEDPA's limitations period should be statutorily tolled for the period during which a motion for reconsideration and/or a petition for *certiorari* was actually pending. *See Nara*, 264 F.3d at 319 (suggesting that AEDPA's limitations period is statutorily tolled for the time during which a petitioner actually seeks reconsideration and/or *certiorari*). Under *Nara*, an application for state post-conviction relief is not pending, and thus AEDPA's limitations period is not statutorily tolled, for the time during which a petitioner could have sought, but did not actually seek, reconsideration or *certiorari*. *See id.* at 318-19. Thus, the first PCRA petition statutorily tolled the limitations period only until August 20, 1998.

[2]In the District Court, the Commonwealth did not object to the court's granting of an extension of time to file the petition or argue that the petition is untimely because it was filed within the court's deadline, but after AEDPA's deadline. In its response to Crews' appeal, the Commonwealth, while not "condoning" this procedure, does not argue that the first petition for habeas corpus was untimely. In any event, the Commonwealth waived the affirmative defense that the first petition was untimely under AEDPA because it did not plead this defense in the answer or raise it at the earliest practicable moment thereafter. *See Robinson v. Johnson*, 313 F.3d 128, 134, 137 (3d Cir. 2002), *cert. denied* 124 S.Ct. 48 (2003)

state courts to correct a constitutional violation." *Walker*, 533 U.S. at 179. Since the petition contains unexhausted claims, the District Court dismissed it without prejudice to refile after exhaustion, concluding that *Rose v. Lundy*, 455 U.S. 509 (1982), compelled dismissal.

In *Lundy*, the Supreme Court held that "because a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." 455 U.S. at 522. However, in relying on *Lundy*, the District Court did not fully appreciate that AEDPA, which was enacted after *Lundy*, "has altered the context in which the choice of mechanisms for handling mixed petitions is to be made." *Zarvela*, 254 F.3d at 379. By introducing a time limit, AEDPA calls into doubt the conclusion in *Lundy* that dismissal of a mixed petition does not "unreasonably impair the prisoner's right to relief," *Lundy*, 455 U.S. at 509, because in situations such as the present one, AEDPA's limitations period may act to deprive a petitioner of a federal forum if dismissal of the habeas petition is required. *See Zarvela*, 254 F.3d at 379.

Since Crews' limitations period expired on November 30, 1998, he will be time-barred from returning to federal court if his petition is dismissed unless he can demonstrate that he is entitled to equitable or statutory tolling. It is not clear, however, that Crews will be able to establish an entitlement to statutory or equitable tolling for the time during which his first federal habeas and second state PCRA petitions were pending. *See Carey v. Saffold*, 536 U.S. 214, 225-26 (2002); *Walker*, 533 U.S. at 180-83, 192; *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000); *Merritt v. Blaine*, No. 01-2455 (3d Cir. 2003); *Nara*, 264 F.3d at 315-16; *Fahy v. Horn*, 240 F.3d 239, 245 (3d Cir.), *cert. denied*, 534 U.S. 944 (2001); *Banks v. Horn*, 271 F.3d 527, 534-35 (3d Cir. 2001), *rev'd on other grounds*, 536 U.S. 266 (2002).[3]

Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition. In *Walker*, four Justices indicated that district courts should stay mixed petitions where there is a danger that dismissal will deny a petitioner federal review. In a concurring opinion, Justice Stevens, joined by Justice Souter, stated that:

> although the Court's pre-AEDPA decision in *Rose v. Lundy*, 455 U.S. 509 (1982), prescribed the dismissal of

---

[3]Crews also suggests that he might be entitled to equitable tolling for the time prior to the filing of his first PCRA petition because he was incompetent to file a petition by himself. The parties agree that it is premature to resolve this issue. It is sufficient to note that this is another ground Crews may raise when he seeks to return to federal court.

federal habeas corpus petitions containing unexhausted claims, in our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies. Indeed, there is every reason to do so when AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims, *see* 28 U.S.C. § 2254(b)(2) (1994 ed., Supp. V), and when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1-year limitations period.

533 U.S. at 182-83 (Stevens, J., concurring). Justices Breyer and Ginsburg, in dissent, agreed with Justice Stevens that federal courts should hold mixed petitions in abeyance under such circumstances. *See id*. at 192 (Breyer, J., dissenting). The *Walker* majority did not reject this conclusion; it did not reach the issue. *See id*. at 181.

Virtually every other Circuit that has considered the issue has held that, following AEDPA, while it usually is within a district court's discretion to determine whether to stay or dismiss a mixed petition, staying the petition is the only appropriate course of action where an outright dismissal " 'could jeopardize the timeliness of a collateral attack.' " *Zarvela*, 254 F.3d at 380 (quoting *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir.), *cert. denied*, 531 U.S. 946 (2000)); *see also Neverson v. Bissonnette*, 261 F.3d 120, 126 n. 3 (1st Cir. 2001); *Mackall v. Angelone*, 131 F.3d 442, 445 (4th Cir. 1998), *cert. denied*, 522 U.S. 1100 (1998); *Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998); *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002); *Kelly v. Small*, 315 F.3d 1063, 1070 (9th Cir. 2003) (noting that there is a "growing consensus" that the *Zarvela* approach is proper). The only Circuit to come out the other way is the Eighth Circuit. *See Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998). However, *Carmichael* relies on pre-AEDPA precedent and does not address the timeliness problems created by AEDPA. *See id.* (citing *Victor v. Hopkins*, 90 F.3d 276, 279-80 (8th Cir. 1996).

In *Zarvela*, the court recognized that the purpose of AEDPA's limitations period is to further the goal of finality by avoiding endless delay in deciding constitutional challenges to a conviction, particularly in capital cases. *See id*. However, the *Zarvela* court found that "the concern about excessive delays in seeking exhaustion and in returning to federal court after exhaustion can easily be dispelled by allowing a habeas petitioner no more than reasonable intervals of time to present his claims to the state courts and

to return to federal court after exhaustion." *Id*. at 381. The *Zarvela* court concluded that a reasonable interval normally is 30 days. *See id*.

The Commonwealth argues that controlling precedent in this Circuit, namely *Christy v. Horn*, 115 F.3d 201 (3d Cir. 1997), is contrary to the *Zarvela* line of cases. In *Christy*, we held that a district court erred in staying a mixed petition instead of dismissing the petition without prejudice because there was no substantial danger that the proffered potential harm would occur. *See id*. at 207. The potential harm in *Christy* was execution, *see id*., while the potential harm in the present case is being barred by time limitations from returning to federal court. Even assuming that *Christy* is applicable in cases involving other types of potential dangers, *Christy* is factually distinguishable from the present case. In *Christy*, a death warrant had not been issued and the General Counsel to the Governor of Pennsylvania assured the *Christy* Court via letter that Christy would not be executed during the pendency of his state court proceedings. Thus, there was no substantial danger of execution. *See id*. at 207.

However, as discussed above, in the present case, there is a substantial danger that Crews will be time-barred from returning to federal court because his petition will be filed after the expiration of the limitations period and it is not clear that he will be entitled to tolling. *Christy* suggests that, under such circumstances

where there is a substantial danger that the proffered potential harm will occur, the petition should be stayed, noting that "[i]f a state court has refused to grant a stay pending its adjudication of a prisoner's federal constitutional claims, such action by the district court would be appropriate." *Christy*, 115 F.3d at 207.

The Commonwealth also argues that we should not follow *Zarvela* because the tools of statutory and equitable tolling are sufficient to ensure that Crews will not be time-barred from returning to federal court if he has acted with reasonable diligence in bringing the claims. However, where, as here, outright dismissal could jeopardize the timeliness of a habeas petition, there are two advantages to staying a mixed petition, rather than dismissing it and relying on tolling to determine if a subsequent petition is timely.

First, a stay preserves judicial resources. While there is an additional cost to district courts in terms of managing their dockets, this cost is more than off-set by the savings in the amount of time that courts will have to spend analyzing timeliness issues. Under the Commonwealth's proposed approach, when a district court decides whether to dismiss a mixed petition, it must determine the likelihood that a petitioner will be able to exhaust his unexhausted claims in state court. This determination is easier now that the Pennsylvania courts have ruled that relaxed waiver is no longer available, but there is still the issue whether a

8

petitioner may be able to qualify for one of the exceptions to PCRA's time-limit. *See* 42 Pa.C.S. § 9545; *Albrecht*, 720 A.2d at 693. Further, under the Commonwealth's proposed approach, a court will have to engage in the fact-intensive analysis of whether a petitioner acted with reasonable diligence when the petitioner seeks to return to federal court. On the other hand, under the *Zarvela* approach, when a petitioner seeks to return to federal court, the initial timeliness of the habeas petition will have already been determined.

The second advantage of staying a mixed petition is that a petitioner knows *before* he chooses to attempt to exhaust his unexhausted claims in state court that he will still have a federal forum to review his exhausted claims, so long as he acts diligently in seeking state review of the unexhausted issues.[4] Under the Commonwealth's proposed approach, however, a petitioner must guess whether he will benefit from attempting to exhaust his unexhausted claims. If the claims are timely in state court, he can exhaust them. If they are not timely, however, the

---

[4]As noted in *Zarvela*, in order to avoid unnecessary delay by the petitioner in pursuing the unexhausted claims in state court, the district court "should condition the stay on the petitioner's initiation of exhaustion within a limited period, normally 30 days, and a return to the district court after exhaustion is completed, also within a limited period, normally 30 days." 254 F.3d at 381.

AEDPA limitations period may not be tolled. He then may be time-barred from raising even his exhausted claims in federal court unless he can demonstrate that he is entitled to tolling. If, however, a petitioner does not attempt exhaustion, he foregoes the possibility of raising his unexhausted claims. *See Lundy*, 455 U.S. at 510, 520. It is not always easy, even for experienced practitioners, to determine where a claim will fall in this mix.

The Commonwealth argues that AEDPA requires a petitioner like Crews to make a strategic decision: he must either abandon his unexhausted claims or else return to state court to attempt to exhaust them at some risk of losing the opportunity for federal review entirely. However, nothing in AEDPA prohibits a district court from avoiding this dilemma by staying a timely mixed petition pending diligent exhaustion of unexhausted claims. AEDPA requires only that a petition be *filed* in federal district court before the end of the limitations period, 28 U.S.C. § 2244(d), and not be *granted* until all claims contained in the petition have been exhausted at the state level, 28 U.S.C. § 2254(b)(1). Thus, a habeas petition may be filed but not granted prior to total exhaustion of state remedies, and a stay pending exhaustion is perfectly consistent with these rules.

The Court in *Lundy* required dismissal of mixed petitions to ensure that a district court would not grant relief on unexhausted claims. The Court explained that "one court should defer action on

causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of litigation, have had the opportunity to pass upon the matter." *Lundy*, 455 U.S. at 518. However, a stay achieves this goal as effectively as a dismissal, because a stay is "a traditional way to 'defer' to another court 'until' that court has had an opportunity to exercise its jurisdiction over a habeas petition's unexhausted claims." *Zarvela*, 254 F.3d at 380.

We will, therefore, follow *Zarvela*. We hold that district courts have the discretion to stay mixed habeas corpus petitions but that, as in this case, when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action.[5] *See*

---

[5]We diverge from *Zarvela* in one respect. The court in *Zarvela* held that only exhausted claims should be stayed, and that unexhausted claims should be dismissed, subject to reinstatement should the petitioner successfully exhaust them. *See* 254 F.3d at 380. We hold that all of the petitioner's claims should be stayed, and any claims that remain unexhausted after the petitioner returns to federal court should be dismissed at that juncture. If the unexhausted claims are dismissed initially subject to reinstatement, the petitioner might use the re-submission as an opportunity to amend his petition to add new claims beyond the one-year filing period. *See United States v. Thomas*, 221 F.3d 430, 436-37 (3d Cir. 2000) (holding

254 F.3d at 380. If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court. *See id*. If a petitioner fails to meet either time-limit, the stay should be vacated *nunc pro tunc*. *See id*.

We note that while these two "reasonable intervals" may appear to enlarge the one-year limitations period for some petitioners, technically these intervals are only available *after* a petition has been timely filed. *See id.* at 382. Further, we agree with the court in *Zarvela* that

> such brief additional time is consistent with the purpose of AEDPA's limitation period, which was to make sure that a state prisoner does not take more than one year after his conviction becomes final *to present his federal claim*. State prisoners should have the full year allowed them by Congress to consider and prepare their federal habeas

---

that a petitioner cannot amend a petition after AEDPA's statute of limitations has run to add an entirely new claim). Our modification of the *Zarvela* rule will conserve judicial resources by avoiding litigation over this issue.

10

petitions, and, if it turns out that the presence of unexhausted claims and the requirements of federal law require a round trip to and from state court to accomplish exhaustion, brief intervals to meet such requirements should not be counted against that one-year period. Prompt action by the petitioner to initiate exhaustion and return to federal court after its completion serves as the functional equivalent of the "reasonable diligence" that has long been a prerequisite to equitable tolling of limitations periods.

*Id*., 254 F.3d. at 382 (emphasis added); *see also Walker*, 533 U.S. at 183 (Stevens, J., concurring) (holding that it is reasonable to believe "that Congress could not have intended to bar federal habeas review for petitioners who invoked the court's jurisdiction within the 1-year interval prescribed by AEDPA."

## IV. Conclusion

For the reasons stated above, the District Court's dismissal of petitioner's habeas corpus petition is reversed, and this case is remanded for further proceedings consistent with this opinion.