

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2008

# Urcinoli v. Cathel

Precedential or Non-Precedential: Precedential

Docket No. 06-4028

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Urcinoli v. Cathel" (2008). *2008 Decisions*. Paper 183.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4028

———————

LOUIS P. URCINOLI,

Appellant

v.

RONALD H. CATHEL, Superintendent;
ATTORNEY GENERAL OF THE STATE OF NEW
JERSEY;
OCEAN COUNTY PROSECUTOR'S OFFICE

———————

On Appeal from the District Court
for the District of New Jersey
(No. 05-cv-04776)
District Judge: Honorable Garrett E. Brown, Jr.

———————

Argued September 11, 2008

Before: SLOVITER, FUENTES, and ALDISERT, <u>Circuit</u>
<u>Judges</u>

-1-

(Opinion Filed: November 7, 2008)

David R. Fine, Esq. (Argued)
Kirkpatrick & Lockhart Preston Gates Ellis
17 North Second Street, 18th Floor
Harrisburg, PA 17101

      Attorney for Appellant

Roberta DiBiase, Esq. (Argued)
Samuel J. Marzarella, Esq.
Office of County Prosecutor
Ocean County
119 Hooper Avenue
P.O. Box 2191
Toms River, NJ 08754

      Attorneys for Appellees

------------

OPINION OF THE COURT

------------

FUENTES, Circuit Judge:

Louis P. Urcinoli was convicted of murder, conspiracy to commit murder, and attempted murder by a New Jersey jury in 1996. The District Court on its own motion dismissed his subsequent habeas petition because it contained claims that had

not been properly exhausted in state court. Although Urcinoli returned to state court to exhaust those claims, by the time he filed a second habeas petition in federal court, the one-year statute of limitations for such petitions had lapsed. The District Court accordingly dismissed the petition as untimely, refusing to equitably toll the limitations period.

Although the District Court's initial dismissal of Urcinoli's petition was not improper under prevailing law, we conclude that the one-year statute of limitations should have been equitably tolled to allow him to bring those claims in his second petition. Therefore, we will vacate the District Court's dismissal and remand for further proceedings.[1]

**I.**

A detailed timeline of Urcinoli's journey through state and federal court will illuminate the basis for our decision. Urcinoli was convicted of murder, conspiracy to commit murder, and attempted murder in New Jersey state court on December 13, 1996. He was sentenced to a term of life imprisonment plus twenty years. The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence and the New Jersey Supreme Court denied certification. Thereafter, Urcinoli pursued a pro se motion for post-conviction

---

[1] We pause to express our appreciation to pro bono counsel, Mr. David Fine of Kirkpatrick & Lockhart Preston Gates Ellis, for representing Louis Urcinoli in this appeal. Our outcome is due, in no small measure, to Mr. Fine's commitment of time and effort and his professionalism on behalf of his client.

relief in the New Jersey courts, a process that ended with the affirmance of Urcinoli's conviction and sentence on May 22, 2002. On August 5, 2002, Urcinoli filed a pro se habeas petition under 28 U.S.C. § 2254 in the U.S. District Court for the District of New Jersey, raising eight alleged constitutional violations.

Although neither Urcinoli nor the state respondents had raised the issue of exhaustion, the District Court independently decided the issue without notice or a hearing. The Court determined that Urcinoli had not exhausted five of his eight claims by properly presenting them to the New Jersey courts as federal constitutional claims and thus had an invalid "mixed" petition.[2] Finding that Urcinoli could still utilize New Jersey's

_____

[2] The grounds for habeas relief were as follows:
(1) a violation of the Fourteenth Amendment based on the denial of his motion for a judgment of acquittal absent evidence sufficient to allow a reasonable jury to convict;
(2) a warrantless search of his apartment violating the Fourth Amendment;
(3) admission of irrelevant evidence at trial in violation of the Fourteenth Amendment;
(4) a failure to sever the charges against him at trial in violation of the Fourteenth Amendment;
(5) admission of expert DNA testimony in violation of the Fourteenth Amendment;
(6) incomplete jury instructions in violation of the Due Process Clause of the Fourteenth Amendment;
(7) ineffective assistance of trial counsel based on a failure to request certain jury instructions and other errors; and
(8) ineffective assistance of trial counsel for failure to properly

post-conviction relief process to exhaust those claims, the District Court dismissed the petition without prejudice on October 31, 2003. By that time, fourteen months after Urcinoli had filed his § 2254 petition, the one-year limitations period for filing a subsequent petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") had passed.

In its opinion, the District Court noted:

> Those prisoners who misunderstand this [total exhaustion] requirement and submit mixed petitions nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims. . . . However, a prisoner who resubmits the petition after deleting the unexhausted claims will generally be barred from later submitting the deleted claims in a second or successive petition after they have been exhausted.

(App. 69 n.7 (internal quotation marks and citations omitted).) The Court did not offer Urcinoli the option of deleting the unexhausted claims from his petition and proceeding on the ones that had been exhausted before it decided to dismiss. Urcinoli did not attempt to refile his petition with only the three exhausted claims, nor did he ask the District Court to reconsider its decision.

On December 13, 2003, six weeks after the District Court

---

cross-examine several witnesses.

The District Court found that Urcinoli had not exhausted the first, third, fourth, fifth, and sixth of these claims in state court.

dismissed his petition, Urcinoli filed a second motion for post-conviction relief in state court. He received a final denial of that motion from the New Jersey Supreme Court on September 12, 2005. Approximately two weeks later, on September 29, 2005, Urcinoli filed a second pro se § 2254 petition, containing the eight grounds from the original petition.

On August 3, 2006, the District Court dismissed this second petition as untimely under 28 U.S.C. § 2244(d)(1), which provides for a one-year time limit on AEDPA petitions. The court held that the limitations period commenced on May 22, 2002, when the New Jersey Supreme Court declined to review Urcinoli's post-conviction appeal. Because AEDPA does not provide for tolling of the limitations period while a § 2254 petition is pending in federal court, as Urcinoli's was for more than fourteen months, the one-year limitations period expired on May 22, 2003. See Duncan v. Walker, 533 U.S. 167, 181 (2001). Therefore, the District Court ruled that Urcinoli's second § 2254 petition, filed on September 29, 2005, was untimely.[3] The court refused to equitably toll the one-year time limitation, reasoning that it was foreclosed from doing so by Third Circuit and Supreme Court precedent. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291, 2253.

---

[3] As previously noted, the one-year limitations period had already lapsed even before the District Court dismissed Urcinoli's first habeas petition.

We granted a certificate of appealability on the issue of whether Urcinoli was entitled to equitable tolling in light of the <u>sua sponte</u> dismissal of his petition after AEDPA's time limitation had run, rendering any subsequent petition time-barred. We exercise plenary review over the District Court's refusal to equitably toll the one-year statute of limitations. <u>See</u> <u>Merritt v. Blaine</u>, 326 F.3d 157, 161 (3d Cir. 2003).

## III.

AEDPA's limitations period is subject to equitable tolling principles. <u>Miller v. N.J. State Dep't of Corrections</u>, 145 F.3d 616, 617-19 (3d Cir. 1998). A statute of limitations "can be tolled when principles of equity would make [its] rigid application unfair." <u>Shendock v. Dir., Office of Workers' Comp. Programs</u>, 893 F.2d 1458, 1462 (3d Cir. 1990). Generally, such a situation arises if "(1) the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." <u>Satterfield v. Johnson</u>, 434 F.3d 185, 195 (3d Cir. 2006) (internal quotation marks omitted). Only the second circumstance, whether Urcinoli has been prevented from asserting his rights in some extraordinary way, is implicated here.[4] The plaintiff bears the burden of showing that such an

---

[4]Blurring the first and second categories, we have also held that one eligible "extraordinary" circumstance might be "where a court has misled a party regarding the steps that the party needs to take to preserve a claim." <u>Brinson v. Vaughn</u>, 398 F.3d 225, 230 (3d Cir. 2005). Citing <u>Brinson</u>, Urcinoli invokes

extraordinary event has stood in his way, and must also demonstrate that he "diligently pursued his rights." <u>McAleese v. Brennan</u>, 483 F.3d 206, 219 (3d Cir. 2007) (citing <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)).

**A.**

We conclude that Urcinoli was prevented from pursuing his habeas claims, in an "extraordinary way," when the District Court, relying upon <u>Rose v. Lundy</u>, dismissed his timely, fully exhausted claims in a way that ensured they would never be reviewed by a federal court. Although the District Court noted in a footnote that Urcinoli could resubmit those claims after deleting the unexhausted claims from his petition, that formal acknowledgment was of little help to Urcinoli. Even if he had chosen to forgo exhaustion of all of his claims and had immediately resubmitted a petition with only the three exhausted

a non-precedential opinion in which a panel of this Court equitably tolled AEDPA's one-year deadline in a situation where a court had dismissed a partially exhausted petition after the limitations period expired. However, that decision rested on the rationale that the district court had affirmatively misled the petitioner through its unreasonably positive portrayal of the petitioner's chances of having his unexhausted claims heard in state court. Here, the District Court's assessment of Urcinoli's prospects in state court appears to have been materially correct. Furthermore, as we discuss below, the District Court committed no other legal error in its disposition of Urcinoli's first petition. It is not any legal error or misleading statement by the District Court that mandates equitable tolling in this case but rather our broader view of the equities of the situation.

-8-

claims, that second petition would have been untimely because the one-year limitations period had already expired.[5] Cf. Tillema v. Long, 253 F.3d 494, 504 (9th Cir. 2001) (noting that where a district court dismisses a petition after the one-year limitations period has ended, even if it does so without prejudice, the practical consequence is to "extinguish[] [the petitioner's] right to federal habeas review" for further petitions). Thus, the District Court effectively denied Urcinoli his only viable option, leaving him to pursue the futile path of presenting his unexhausted claims in state court, even though AEDPA's one-year limitations period had passed and any further petition would be barred.[6]

---

[5] Furthermore, as a pro se petitioner, Urcinoli may well have been confused about the proper course of action in light of the District Court's decision. Although the Court mentioned the choices of deletion versus exhaustion, it warned only that deletion would require Urcinoli to give up on his unexhausted claims without mentioning that the ticking clock of AEDPA could render exhaustion of those claims in state court impossible.

[6] In this respect, Urcinoli's case is unlike that of the petitioner in Jones v. Morton, 195 F.3d 153 (3d Cir. 1999), the case relied on by the District Court in denying equitable tolling. In Jones, the court denied equitable tolling because the petitioner refused to seek exhaustion in state court even after his original mixed petition was dismissed. Id. at 160. Urcinoli, on the other hand, duly attempted to present his unexhausted claims in state court once the District Court pointed out their status.

The District Court acted properly when it dismissed Urcinoli's petition as a mixed petition under Rose v. Lundy, 455 U.S. 509 (1982). In that case, the Supreme Court held that no federal court may hear a petition containing both exhausted and unexhausted claims. Id. at 522. However, the Court also stated that a prisoner bringing a mixed petition has two choices: he may accept a dismissal and return to state court to exhaust any unexhausted claims, or he may delete the unexhausted claims from the petition and proceed only with the remaining exhausted claims. Id. at 519 (noting that a petitioner "can always amend [a mixed] petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

Deletion of unexhausted claims is an important procedural choice for habeas petitioners to have available. Because of AEDPA's short limitations period, the alternative of exhausting any unexhausted claims is often an illusory one, since it is not uncommon for a district court to dismiss a mixed petition after the one-year limitations period has passed and no time remains to return to state court. The Supreme Court recognized and ameliorated that problem in 2005, adding a third alternative to the Rose procedure by providing that in certain circumstances a district court may "stay the [mixed] petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Rhines v. Weber, 544 U.S. 269, 275-76 (2005). However, at the time Urcinoli's first petition was dismissed in 2003, the "stay-and-abeyance" procedure approved in Rhines had not yet been sanctioned.[7] Moreover, Justice O'Connor made it clear in Rhines that since stay-and-abeyance is to be used only in "limited circumstances,"

---

[7] We created our own version of the stay-and-abeyance procedure before the Supreme Court's decision in Rhines, but that decision also post-dated the District Court's October 31, 2003 dismissal. See Crews v. Horn, 360 F.3d 146 (3d Cir. 2004).

-10-

where it is not warranted a court should at least afford the petitioner an opportunity to carve up the petition to keep the exhausted claims and dismiss the unexhausted ones. Id. at 277-78.

Unlike the usual petitioner, Urcinoli therefore had none of the three options for going forward with a mixed petition. First, he could not refile his petition with the unexhausted claims deleted, because the District Court's dismissal after the end of AEDPA's limitations period meant that any refiling would be time-barred. Second, his attempt to achieve total exhaustion was futile from the start, since a subsequent petition filed after a trip through the New Jersey courts would be even more untimely. Finally, the "stay-and-abeyance" procedure had not yet been established when Urcinoli's first petition was dismissed in 2003.

The latter two procedures are by no means guaranteed to a habeas petitioner: AEDPA's one-year window places a practical limit on how many times a petitioner can travel back and forth between state and federal court, while only certain habeas petitioners are eligible for stay-and abeyance.[8] Id. However, as the Supreme Court recognized in Rose and affirmed in Rhines, the deletion route remains as a backstop alternative for those petitioners caught between the total exhaustion rule and AEDPA's statute of limitations:

> [I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted

---

[8] Specifically, the Court held that a district court should allow a petitioner to stay only if he can demonstrate good cause for the failure to first exhaust his claims in state court, the unexhausted claims are not plainly meritless, and the petitioner has not engaged in "abusive litigation tactics or intentional delay." Rhines, 544 U.S. at 277-78.

-11-

claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

Rhines, 544 U.S. at 277-78 (citing Rose, 455 U.S. at 522).

Equitable tolling is an appropriate remedy in this case to ensure Urcinoli has the opportunity to have the court evaluate the claims originally presented. Cf. Jefferson v. Budge, 419 F.3d 1013, 1016-17 (9th Cir. 2005) (tolling AEDPA's statute of limitations where the district court had failed to provide a habeas petitioner the option of deleting unexhausted claims rather than returning with those claims to state court); Tillema v. Long, 253 F.3d 494, 503-04 (9th Cir. 2001) (same). The District Court's dismissal, without notice to Urcinoli, prevented him from using the deletion option, noted both in Rose and by the District Court itself, to achieve a fair hearing of his properly exhausted claims. (See App. 69 n.7 ("'Those prisoners who misunderstand this [total exhaustion] requirement and submit mixed petitions nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims.'") (quoting Rose, 455 U.S. at 519).) The lack of notice was especially problematic because, as a pro se petitioner, Urcinoli was less likely to foresee the exhaustion issue on his own or to know how to avoid it.

We emphasize that the District Court did not err legally in dismissing Urcinoli's petition without giving him notice and the opportunity to respond to the exhaustion argument on the merits, delete the exhausted claims, or seek a stay of the petition. Although we have held that a district court may not sua sponte dismiss a habeas petition for lack of timeliness without affording the petitioner "notice and an opportunity to respond," that decision came after the District Court's 2003 dismissal of Urcinoli's petition. See United States v. Bendolph, 409 F.3d 155, 166-67 (3d Cir. 2005) (en banc).

Nonetheless, a court's action, even if legitimate when

-12-

taken, may constitute an extraordinary circumstance warranting equitable tolling if it later operates to prevent a plaintiff from pursuing his rights. For example, in Taylor v. Horn, we approved the equitable tolling of AEDPA's limitations period based on an incorrect prediction by a district court rather than any legal error. 504 F.3d 416, 426-27 (3d Cir. 2007). The district court had dismissed Taylor's first petition as mixed, declining to stay the petition because of its belief that a second, fully exhausted petition would relate back to the first petition and thus remain timely. Id. at 426. However, while Taylor was pursuing his claims in state court we ruled that a second habeas petition does not relate back to a first petition dismissed for failure to exhaust. See Jones v. Morton, 195 F.3d 153 (1999). Recognizing its misstep, the district court equitably tolled AEDPA's limitations period to allow Taylor to bring his second petition, reasoning that he would not have originally denied Taylor's request for a stay if he had had the benefit of Jones and a second Third Circuit decision, Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), allowing such stays. Taylor, 504 F.3d at 426-27. We approved the district court's decision that its actions constituted an extraordinary circumstance that had prevented Taylor from asserting his rights, despite the fact that its dismissal had not contravened any precedent governing at that time.

Equitable tolling is similarly necessary here to allow Urcinoli to pursue his claims. The District Court's sua sponte dismissal under Rose was an extraordinary circumstance that left Urcinoli without a viable channel for having any of his claims addressed on the merits. Rose was meant only to prevent review of unexhausted habeas claims, not to bar viable, exhausted claims from federal court review.

Contrary to the State's assertions, Pliler v. Ford, 542 U.S. 225 (2004), does not forbid this result. In Pliler, the Supreme Court overturned a Ninth Circuit decision that required district courts to warn habeas petitioners presenting mixed petitions if

-13-

AEDPA's limitations period had expired. Id. at 231. The purpose of the warning was to inform a petitioner that if he chose to pursue exhaustion instead of deletion he would effectively be foreclosed from refiling in federal court. Id. at 229-30. The Supreme Court rejected any such mandatory notification on the grounds that it "would force upon district judges the potentially burdensome, time-consuming, and fact-intensive task of making a case-specific investigation and calculation of whether the AEDPA limitations period has already run or will have run by the time the petitioner returns to federal court." Id. at 232. In this case, however, we do not grant equitable tolling based on any failure by the District Court to determine that Urcinoli's window for filing a second habeas petition had expired and to advise him that a return to state court would be futile. Rather, we do so because Urcinoli was deprived of the ability to choose for himself whether deletion of his unexhausted claims or an attempt to fully exhaust all his claims would be his best option.

In Pliler, the Supreme Court disavowed any reading of Rose that would impose a requirement for district courts to affirmatively offer petitioners the choice of deleting unexhausted claims from mixed petitions or returning with those claims to state court. Id. at 233. However, in doing so the plurality explained that "Rose requires dismissal of mixed petitions, which, as a practical matter, means that the prisoner must follow one of the two paths outlined in Rose if he wants to proceed with his federal habeas petition." Id. That is, after dismissal of a mixed petition, a petitioner must choose whether to seek full exhaustion or to refile only his exhausted claims. Urcinoli's situation illustrates that the assumption that both paths will remain open post-dismissal is not always correct.

We are further convinced that Pliler is inapplicable here in light of its discussion of Castro v. United States, 540 U.S. 375 (2003). Castro, a federal prisoner acting pro se, had filed what he called a motion for new trial, attacking his drug conviction.

-14-

Id. at 378. The district court sua sponte recharacterized that motion as a habeas petition and denied Castro's claims. Id. When he later filed a petition under AEDPA, the district court dismissed that filing as a forbidden successive habeas petition. Id. at 378-79. The Supreme Court held that the recharacterization of the first motion was improper because the district court had not warned Castro of the consequences under AEDPA, including the bar on successive petitions, and had not given him a chance to oppose the recharacterization or to withdraw or amend the motion. Id. at 382; cf. United States v. Miller, 197 F.3d 644 (3d Cir. 1999) (similar holding). In Pliler, Justice Thomas explained that the notice required by Castro was distinguishable from the Ninth Circuit's proposed warning because Castro "dealt with a District Court, of its own volition, taking away a petitioner's desired route," as opposed to the voluntary dismissal at issue in Pliler. 542 U.S. at 233-34. Urcinoli's case is far more similar to Castro's forced imposition of a potentially harmful course of action on a petitioner than to Pliler, where the Supreme Court dealt with a court's failure to warn a petitioner that his chosen approach was unwise.[9] Thus

---

[9] Pliler does not address whether a district court has some obligation to expressly offer petitioners both options—deletion or exhaustion—even if it makes no recommendation as to which course to take. We suggested that such a duty might exist in Brinson, stating that where a petitioner presented at least one meritorious, exhausted claim in a mixed petition, "the District Court, at a minimum, should have given [him] the option of going forward with" that claim. 398 F.3d at 231-32 (citing Rose, 455 U.S. at 510). Since Urcinoli's complaint is not that he was not informed of the deletion route, but rather that he could not take it, it is not necessary to address the import of Pliler in such a situation. However, we think it a good practice for a district court to advise a petitioner of his options in going forward with a mixed petition.

-15-

we do not tread into <u>Pliler</u>'s forbidden ground in granting equitable tolling based on the District Court's dismissal of Urcinoli's petition without giving him notice of the consequences of that dismissal.

In our view, the Court's dismissal of Urcinoli's petition without notice deprived Urcinoli of his rights in an extraordinary way. Although that dismissal was not incorrect under contemporaneous precedent, in applying equitable tolling doctrine we do not focus solely on legal error. We rest our holding on the fact that the district court's <u>sua sponte</u> dismissal, a circumstance outside of Urcinoli's control and independent of any blameworthy behavior on his part, rendered him unable to pursue his only viable course of action. In such a situation, the equities favor relief to allow Urcinoli access to federal review of his claims.

**B.**

In addition to showing that he was prevented from pursuing his rights in some extraordinary way, Urcinoli must prove he exercised reasonable diligence in attempting to exercise those rights. <u>Merritt v. Blaine</u>, 326 F.3d 157, 168 (3d Cir. 2003). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." <u>LaCava v. Kyler</u>, 398 F.3d 271, 277 (3d Cir. 2005). Here, Urcinoli promptly sought initial state post-conviction relief, brought his first habeas petition, filed a state post-conviction motion for his unexhausted claims after that petition was dismissed, and returned to federal court with his second § 2254 petition. <u>Compare</u> <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 419 (2005) (refusing to toll AEDPA limitations period where petitioner waited years to seek relief); <u>Merritt</u>, 326 F.3d at 170 (rejecting equitable tolling for lack of diligence where petitioner unnecessarily waited two years to file habeas petition).

It is true that Urcinoli's conduct was imperfect in one respect: he did not fully exhaust all of his claims before bringing

-16-

them to federal court in his first § 2254 petition. However, that lapse does not indicate a lack of diligence on Urcinoli's part, but rather a lack of legal knowledge as to his obligation to exhaust. Therefore, the initial failure to exhaust does not affect Urcinoli's eligibility for equitable tolling. Cf. Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) (holding that petitioner acted diligently and equitable tolling was warranted without reference to fact that his initial petition was mixed); Brinson v. Vaughn, 398 F.3d at 232 (same).

## IV.

This result does not expand equitable tolling beyond its scope as a remedy invoked only "sparingly," Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990), since circumstances such as these are less likely to arise in the future in light of Rhines and Bendolph. In facing a potentially mixed habeas petition, Bendolph directs district court judges to notify a petitioner (especially a pro se petitioner) of the exhaustion issue, if he is not already aware of it, and to give him an opportunity to respond to the allegation of non-exhaustion. 409 F.3d at 166-67. That notice will also allow a petitioner to indicate his preferred course of action as to any unexhausted claims. If a district court finds that a petition does contain unexhausted claims, the court should consider whether stay-and-abeyance is an appropriate measure under the test set out in Rhines. 544 U.S. at 277-78. These steps ensure that each petitioner is free to pursue any of the three routes now available for dealing with mixed petitions.

## V.

For the foregoing reasons, we will reverse the District Court's dismissal of the second § 2254 petition and remand for the court to consider the exhausted claims Urcinoli presented in his petition. In light of our decision to remand, we need not reach the State's argument that Urcinoli's claims are still unexhausted.