Rene SANTANA, Appellee,

v.

Peter FENTON, Superintendent, Rahway State Prison and The Attorney General of the State of New Jersey, Appellants.

No. 81–2579.

United States Court of Appeals,
Third Circuit.

Argued May 25, 1982.

Decided July 23, 1982.

---

Irwin I. Kimmelman, Atty. Gen. of N. J., Trenton, N. J., George L. Schneider, Essex County Prosecutor, Hilary L. Brunell, Asst. Essex County Prosecutor (argued), Newark, N. J., for appellants.

David A. Ruhnke, Asst. Federal Public Defender, D. N. J., Newark, N. J. (argued), for appellee.

Before SEITZ, Chief Judge, and SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The State of New Jersey appeals from the district court's order conditionally granting Rene Santana's petition for a writ of habeas corpus. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

Santana was convicted in state court of a felony-murder occurring during an attempted robbery in Newark, New Jersey. Santana's conviction was modified and affirmed by the New Jersey Appellate Division, and the New Jersey Supreme Court denied certification. Santana then petitioned for a writ of habeas corpus in district court.

The first two claims in Santana's petition involve the prosecutor's effort to bolster the credibility of the State's witness, Carmen Crespo. Crespo testified that on the day before the robbery attempt, she held an informal christening ceremony at her apartment in honor of the child of a co-defendant in the case and that Santana, who was present at the ceremony, was named godfather of the child. This testimony was offered to discredit Santana's alibi defense. Although Santana himself did not take the stand, a defense witness had testified that Santana was in Corona, New York at the time of the ceremony and on the following day, when the crime was committed.

Defense counsel vigorously attacked Crespo's credibility, claiming that she had lied to protect her brother, at one time a suspect in the investigation. The prosecutor made the following statement in his summation in an attempt to bolster Crespo's credibility:

Now what did [Crespo] tell us? She told us that there was a christening at her house. Have you heard anybody come into this courtroom and deny that a christening took place that night? Do you think she is making that up to you? She said that Jose's baby was going to be baptized ... and she said that this defendant is the baby's godfather. Did anybody deny that to you? Did anybody ever say that was a lie to you? Why is she going to make that up if it is not so?

After the prosecution's summation, defense counsel moved for a mistrial, claiming that the clear implication of this statement was that one of the two defendants should have denied Crespo's testimony. After extensive discussions with counsel, the trial court denied the motion. Immediately thereafter, defense counsel informed the court that Santana desired to take the stand to deny that he was the godfather of Jose Rodriguez's child. The court refused to reopen the case so that Santana could testify.

Santana's habeas petition alleges: 1) that the prosecutor's remark was an impermissible comment on his failure to testify, *see* *Griffin v. California*, 380 U.S. 690, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); 2) that the trial court's refusal to reopen the case deprived him of his constitutional right to testify; and 3) that numerous instances of prosecutorial misconduct denied him his right to a fair trial.

The district court granted a conditional writ of habeas corpus, holding that the prosecutorial comment "did highlight and emphasize the failure of both defendants to testify," and that this error was not harmless beyond a reasonable doubt. The court rejected Santana's right-to-testify argument, and did not consider the third ground raised. The State appeals.

**II.**

We first consider whether Santana exhausted his state remedies as required by 28 U.S.C. § 2254(b) (1976), with respect to his claim that the trial court's refusal to reopen the case denied him his constitutional right to testify.[1] *In Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court held that if a habeas petition contains both unexhausted and exhausted claims, the entire petition must be dismissed for failure to comply with section 2254(b). Thus, we may not consider the merits of any of Santana's arguments unless we conclude that he has exhausted his state remedies with respect to each claim. *See Slotnick v. O'Lone*, 683 F.2d 60 (3d Cir. 1982).

In *Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir. 1982) (per curiam), this court held that a habeas petitioner "bear[s] the burden of demonstrating that he has met the procedural requisites that entitle him to relief." Accordingly, Santana must demonstrate that he "has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect" his rights. 28 U.S.C. § 2254(b). We proceed to consider whether Santana has met his burden with respect to the right-to-testify claim.[2]

**A.**

To demonstrate compliance with the exhaustion requirement, a habeas applicant must show that the federal claim he asserts in federal court has been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). We have emphasized that "it is not enough that the petitioner presents to the state court the facts upon which a federal claim is based."

---

1. We note that the State does not argue that Santana failed to exhaust state remedies with respect to his other two claims. Because of our disposition of the case, however, we need not decide whether either of these issues were presented to the New Jersey courts.

2. Santana's contention that the state failed to preserve the exhaustion issue on appeal is without merit. State prosecutors may not waive or concede exhaustion. *See United States ex rel. Trantino v. Hatrack*, 563 F.2d 863, 896 (3d 1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978).

*Brown*, 669 at 158. The argument raised in federal court must be the "substantial equivalent" of that presented to the state courts, *Picard* at 277–78, 92 S.Ct. at 513, to insure that the "method of analysis" was "readily available to the state court." *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976) (in banc).

We have examined the trial court record, as well as the briefs submitted to the New Jersey Appellate Division and the New Jersey Supreme Court. In none of these documents do we find evidence that Santana urged that the failure to reopen the case would deny him his constitutional right to testify. Rather, his argument was grounded exclusively upon state law. For example, in the brief submitted to the Appellate Division, Santana relied on *State v. Gray*, 101 N.J.Super. 490, 244 A.2d 703 (1968), to support his contention that the trial court "abused its discretion in its refusal to permit defendant to testify in his own behalf." Nor did Santana present a constitutionally based argument in the petition for certification, which stated only that "the denial of the motion to reopen the defense case to permit defendant to testify in light of the prosecutor's comments in summation" required reversal. Our conclusion does not rest simply upon Santana's failure to invoke a specific constitutional provision in his state court briefs. Indeed, this court has held that such a failure will not preclude a finding of exhaustion where "the substance of the ... state claim is virtually indistinguishable from the [constitutional] allegation" raised in federal court. *Bisaccia v. Attorney General of New Jersey*, 623 F.2d 307, 312 (3d Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). In this case, however, the state court record is devoid of any indication that Santana presented the legal basis of the constitutional right-to-testify argument he now asserts in federal court. *See Brown*, 669 F.2d at 161. Indeed, Santana now concedes that the argument "was never presented to the state courts in the context of a federal constitutional claim." We agree, and thus conclude that Santana did not present to the state courts the claim he now asserts in his habeas petition. *See Paulett v. Howard*, 634 F.2d 117, 119 (3d Cir. 1980) (per curiam) (petitioner had not presented due process claim to state court where "his argument with respect to the prosecutor's opening remarks was presented to the Superior Court of Pennsylvania as reversible trial error, not as a constitutional violation").

B.

Our conclusion that Santana did not raise the right-to-testify claim in prior state proceedings does not end the exhaustion inquiry. If Santana demonstrates "either an absence of available State corrective procedures or the existence of circumstances rendering such process ineffective," 28 U.S.C. § 2254(b), his failure to present the right-to-testify claim to state court will not foreclose our consideration of his petition. *See Humphrey v. Cady*, 405 U.S. 504, 516, 92 S.Ct. 1048, 1055, 31 L.Ed.2d 394 (1972).

Santana argues that two state procedural rules would preclude consideration of his right-to-testify claim by New Jersey courts in post-conviction relief proceedings. First, he points to N.J.R. 3:22–4, which bars consideration of certain post-conviction claims that could have been raised on direct appeal. He contends that because of his failure to assert the constitutional argument on direct appeal, the rule would foreclose any relief in state post-conviction proceedings. Second, he argues that New Jersey's five-year limitation on the filing of petitions for post-conviction relief, N.J.R. 3:22–12, erects an independent bar to state court remedies.

1. *Rule 3:22–4*

New Jersey Rule 3:22–4 provides:

Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction or ... in any appeal taken in any such proceeding is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or

(b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

We agree with Santana that a New Jersey court would conclude that he had failed to raise his constitutional right-to-testify argument in prior proceedings and thus would apply N.J.R. 3:22–4. Although the New Jersey Supreme Court has not articulated a standard defining when a "ground for relief" has been raised in a prior proceeding, we are guided by a lower court decision. In *State v. Bontempo*, 170 N.J.Super. 220, 406 A.2d 203 (1979), the New Jersey Superior Court held that the standard set forth in *Picard* and *Zicarelli* "should be applied with equal force," 170 N.J.Super. at 234, 406 A.2d at 210, in a determination, under state law, whether an issue had been raised in proceedings prior to a petition for post-conviction relief. The court concluded that an argument has been raised in prior proceedings when "the issue raised is identical or substantially equivalent to that adjudicated on direct appeal." *Id.* Applying this same standard in the exhaustion context, we have held that the argument presented to state courts was not the substantial equivalent of the constitutional argument he now presses in federal court, and believe that a New Jersey court would reach the same result under its own rule.

We do not believe, however, that Santana has persuasively demonstrated that the New Jersey rule would bar consideration of his newly raised constitutional argument. N.J.R. 3:22–4(c) does not preclude new claims if "the denial of relief would be contrary to the Constitution of the United States or the State of New Jersey." This exception suggests that a New Jersey court might well consider a constitutional claim that had not been raised on direct appeal. Concededly, New Jersey courts have not defined the circumstances under which a denial of post-conviction relief would be "contrary to the Constitution" so as to trigger this exception to N.J.R. 3:22–4. Our examination of recent state court decisions suggests, however, that New Jersey courts

will entertain petitions under this provision if the alleged error "was of constitutional dimension," *Bontempo*, 170 N.J.Super. at 233, 406 A.2d at 209, or where granting of relief would avoid "the serious impairment of defendant's constitutional rights." *State v. Cerbo*, 78 N.J. 595, 605, 397 A.2d 671, 676 (1979) (post-conviction claim not cognizable where its "sole purpose would be to vindicate a statutory policy"). *See State v. Clark*, 65 N.J. 426, 437 n.13, 323 A.2d 470, 476 n.13 (1974) (rule was revised in 1969 to provide separate category for constitutional violations, supplementing "fundamental injustice" category of Rule 3:22–4(b)). We do not, of course, express any opinion as to the merits of petitioner's right-to-testify argument. We do, however, believe that if a New Jersey court were to find the argument of constitutional dimension, it would entertain the petition under N.J.R. 3:22–4(c). Because Santana has not suggested a contrary interpretation of this exception, we believe that his reliance on N.J.R. 3:22–4 is misplaced.

■ This court has cautioned that "litigants should not be sent on patently futile, circular journeys in formal search of relief which has already been determined unavailable." *Fitzsimmons v. Yeager*, 391 F.2d 849, 857 (3d Cir.) (in banc), *cert. denied*, 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 137 (1968). We must also be wary of characterizing a state remedy as unavailing simply to avoid the disquieting consequences a contrary conclusion might have upon a petitioner's attempt to seek relief. At least where a fair reading of the state post-conviction relief statute indicates that a state court might well entertain constitutional claims not raised in prior proceedings, and in the absence of a state court decision clearly foreclosing such a result, we cannot conclude that petitioner has demonstrated compliance with the exhaustion requirement.

We find support for this position in a number of decisions from other circuits. In *Thomas v. Wyrick*, 622 F.2d 411 (8th Cir. 1980), for example, the court was uncertain whether, under Missouri law, a state court

would entertain a petition for post-conviction relief despite petitioner's failure to raise a constitutional issue on direct appeal. Noting that "[w]hether a state remedy is presently available is a question of state law as to which only the state courts may speak with final authority," *id.* at 414, the court dismissed the petition for failure to exhaust state remedies. In *Cameron v. Fastoff*, 543 F.2d 971 (2d Cir. 1976), the court dismissed a petition for failure to exhaust state remedies where the availability of state remedies was considerably more uncertain than in this case. Unlike N.J.R. 3:22–4, the New York statute considered in *Cameron* barred, without exception, all claims that could have been raised in prior proceedings on direct appeal. *See* N.Y. Crim.Proc.Law § 440.10(2)(c) (McKinney 1971). Nonetheless, the court was "loathe to hold . . . that the [statute] was intended by the New York Legislature to foreclose raising, under the circumstances here presented, claimed violations of the United States Constitution in a post-conviction proceeding." *Id.* at 978. Stating that the interpretation of the New York statute "should be decided by the New York courts," *id.*, the court dismissed the petition for failure to exhaust state remedies.[3] Although we need not decide whether we would reach the same conclusion were we confronted with a similar statute, we believe that the "deeply rooted policy of maintaining a proper balance of authority between national and state governments in our federal system," *id.*, that informed the Second Circuit's decision is of even greater force here. Santana contends that the Supreme Court's recent decision in *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), compels a contrary result. We disagree. In *Engle*, the Court considered the effect of an Ohio statute

barring claims in collateral proceedings that could have been litigated on direct appeal. The Court held that since the petitioners could have raised the constitutional claim in prior proceedings, state relief was unavailable and they had therefore exhausted state remedies. *Id.* at 1570 n.28. The Ohio statute at issue in *Engle*, however, renders that case clearly distinguishable. That statute has been strictly interpreted by Ohio courts to permit consideration of only those issues involving the convicting court's jurisdiction. *See State v. Perry*, 10 Ohio St.2d 175, 178–79, 226 N.E.2d 104, 106–07 (1967). *See also Keener v. Ridenour*, 594 F.2d 581, 589–90 (6th Cir. 1979). Because the petitioner in *Engle* did not contest the jurisdiction of the state trial court, it was clear that all avenues of post-conviction relief in state courts were foreclosed. *See also United States ex rel. Barksdale v. Sielaff*, 585 F.2d 288 (7th Cir. 1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2409, 60 L.Ed.2d 1067 (1978) (prisoner exhausted state remedies where Illinois post-conviction relief statute precluded all claims that could have been, but were not, raised in prior proceedings); *United States ex rel. Johnson v. Johnson*, 531 F.2d 169, 173 (3d Cir.), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976) (no state remedies available where state law precludes consideration of any new theories in support of ineffective assistance of counsel claim after state court has ruled on the merits of a previous ineffective assistance claim). In contrast, the New Jersey post-conviction relief statute appears to permit the raising of certain constitutional issues that have not been raised on direct appeal.

We thus hold that Santana has failed to demonstrate that N.J.R. 3–22–4 would bar consideration of his right-to-testify argument by a New Jersey court considering his petition for post-conviction relief.

---

**3.** *See also Powell v. Wyrick*, 657 F.2d 222, 224 (8th Cir. 1981) ("federal courts should defer action only if there is some reasonable probability" that state court would entertain claim); *Hoover v. New York*, 607 F.2d 1040, 1042 (2d Cir. 1979) (per curiam) (requiring exhaustion where unavailability of state remedies is "not utterly clear"); *Eaton v. Wyrick*, 528 F.2d 477, 482 (8th Cir. 1975) (requiring "clear manifesta-

tion" that state court would not entertain petition presenting constitutional claim that could have been raised on direct appeal). *Cf. Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (habeas petitioner not required to seek relief in state court "if corrective process is so clearly deficient as to render futile any effort to obtain relief").

### 2. Rule 3:22–12

Santana also asserts that the five year limitations period imposed by N.J.R. 3:22–12 for the filing of petitions for post-conviction relief erects a bar to the state court's consideration of his constitutional claim. The rule provides that no petition shall be filed "more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect." It is clear that N.J.R. 3:22–12 would not have barred Santana's petition for post-conviction relief at the time he filed his petition for habeas corpus in district court. A judgment of conviction was entered against Santana on May 19, 1976, and he filed the instant petition on November 19, 1979, well within the five-year limitations period prescribed by the statute. Nevertheless, Santana argues that because of "the passage of time since the filing of this petition," he is now time-barred from seeking relief in New Jersey courts, and thus has exhausted available state remedies.

This argument is without merit. The Supreme Court has stated that the statutory exhaustion requirements of 28 U.S.C. § 2254(b) & (c) are "limited in their application to those state remedies still open to the habeas applicant at the time he filed his application in federal court." *Humphrey,* 405 U.S. at 516, 92 S.Ct. at 1055. *See Fay v. Noia,* 372 U.S. 391, 434–35, 83 S.Ct. 822, 846–47, 9 L.Ed.2d 837 (1963); *Dana v. Tracy,* 360 F.2d 545, 548 (1st Cir.), *cert. denied,* 385 U.S. 941, 87 S.Ct. 3115, 17 L.Ed.2d 221 (1966) ("The availability of [state] remedies should be assessed as of the time when application was made for the writ of habeas corpus").

The rationale for this focus is grounded squarely on the purposes underlying the statutory exhaustion requirement. As a matter of comity, state prisoners must avail themselves of state remedies to give state courts the first opportunity to pass on alleged defects in the criminal proceedings leading to their convictions. It would severely undermine this policy if federal courts were to excuse the failure to resort to state remedies, under the rubric of exhaustion, on the ground that the state remedies that were available at the time a petitioner sought relief in federal court are no longer open to him. *See Belbin v. Picard,* 454 F.2d 202, 203–04 (1st Cir. 1972) (dismissing petition where petitioner had state remedy of appeal available at time federal petition was filed, but because of his failure to file timely appeal, none was available at time of court of appeals decision). *Cf. Whitley v. Steiner,* 293 F.2d 895, 898–99 (4th Cir. 1961) ("Where a state prisoner . . . has a remedy in the state court but fails to avail himself of it, and later finds himself without a state remedy, he may not have redress through federal habeas corpus."). We thus conclude that N.J.R. 3:22–12 cannot excuse Santana's failure to seek relief in state court.

### C.

We recognize, but need not address, the possibility that any future attempt by Santana to seek adjudication of his constitutional right-to-testify claim in federal court may be challenged on the basis of claimed procedural default. Nonetheless, we believe that our conclusion is compelled by recent pronouncements by the Supreme Court that the exhaustion requirement must be "rigorously enforced," *Rose,* 102 S.Ct. at 1203, and its recognition that principles of federal-state comity must restrain unnecessary "[f]ederal intrusions into state criminal trials." *Engle,* 102 S.Ct. at 1571. In *Rose,* the Court sent a "simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." 102 S.Ct. at 1204. Our message is in keeping with this mandate, and is equally plain: Unless it would be patently futile to do so, you must seek relief in state court before filing a federal habeas petition, or risk forfeiting your claims.

### III.

We have concluded that Santana has failed to demonstrate that he has exhausted

state remedies with respect to his right-to-testify argument. Thus, we will reverse the order conditionally granting Santana's writ of habeas corpus, and remand the case to the district court with instructions to dismiss the petition for failure to exhaust state remedies, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Rose*, 102 S.Ct. at 1199; *Slotnick*, at 61.