Robert S. BARNHART, Petitioner

v.

Kenneth D. KYLER, Superintendent,
et al., Respondents.

Civil Action No. 1:03–CV–2297.

United States District Court,
M.D. Pennsylvania.

May 21, 2004.

Barnhart ("Barnhart"), to the report of the magistrate judge finding petitioner's claim of unconstitutional denial of parole by respondent, the Pennsylvania Board of Probation and Parole ("Board"), to be procedurally barred and recommending dismissal of the petition for writ of habeas corpus without prejudice to allow petitioner to seek additional state collateral review of his claim. Petitioner contends that his procedural default should be excused. Alternatively, he requests that the instant action be held in abeyance while he pursues available state remedies.

Resolution of the objections requires an examination of the twin doctrines of exhaustion and procedural default. For the following reasons, the court adopts the finding of the magistrate judge that petitioner's claim is procedurally barred. However, the court concludes that a stay of this action is not warranted because state remedies are unavailable. Therefore, the court will dismiss the petition for writ of habeas corpus with prejudice.

Robert S. Barnhart, Huntingdon, PA, Pro se.

Amanda L. Smith, Harrisburg, PA, for Respondent.

Edward Marsico, Harrisburg, PA, Pro se.

## MEMORANDUM

CONNER, District Judge.

Presently before the court are objections (Doc. 14) by petitioner, Robert S.

## I. Statement of Facts

Only the procedural history of Barnhart's journey from the Board through the state and federal courts is material to resolution of the instant petition, and it may be summarized briefly. Barnhart, serving a thirteen- to thirty-year sentence of imprisonment relating to a 1980 conviction for rape and aggravated assault,[1] sought and was denied parole on several occasions, the last by written decision of the Board on April 24, 2002.[2] (Doc. 1 ¶¶ 1, 3–6; Doc. 10, Exs. A–F, N). Barnhart re-

---

1. The sentence commenced in 1983 and was imposed, coincidently, by the Honorable William W. Caldwell, then a judge of the Court of Common Pleas of Dauphin County, Pennsylvania, and now a senior judge of this court. (Doc. 10, Ex. A).

2. The Board later modified its decision, giving additional reasons for the denial of parole, by notice dated October 28, 2002. (Doc. 10, Ex. G).

sponded by filing a petition for writ of mandamus in the Commonwealth Court of Pennsylvania. (Doc. 10, Exs.J–K). He claimed that the Board had applied post–1996 parole guidelines to his pre–1996 conviction in violation of the Ex Post Facto Clause of the Constitution. *See* U.S. CONST. art. I, § 9, cl. 3. The revised guidelines emphasize public safety rather than rehabilitation as the "foremost" factor in parole decisions. *See* PA. STAT. ANN. tit. 61, § 331.1. The commonwealth court rejected Barnhart's claim and denied the petition by order dated November 22, 2002. Barnhart filed a motion for reargument, which the court denied on December 12, 2002. (Doc. 10, Exs.D–E).

On January 13, 2003, Barnhart filed a notice of appeal to the Supreme Court of Pennsylvania. (Doc. 10, Ex. K). The court quashed the action as untimely, citing Pennsylvania Rule of Appellate Procedure 903(a), which requires appeals to be filed within thirty days of the final order of the lower court. It denied Barnhart's subsequent motion for reargument on May 21, 2003. (Doc. 10, Exs.H–I).

Barnhart filed the instant petition for writ of habeas corpus on December 17, 2003, presenting the same claim of unconstitutional denial of parole previously raised in the state petition for writ of mandamus. (Doc. 1). In a report and recommendation dated March 10, 2004, the magistrate judge to whom the case was assigned found that the claim was procedurally barred by Barnhart's failure to file a timely appeal from the order of the commonwealth court but concluded that Barnhart could obtain further review through a state petition for writ of habeas corpus. (Doc. 13). The report recommended that the case be dismissed without prejudice to Barnhart's right to re-file his federal petition after the Supreme Court of Pennsylvania was given an opportunity to adjudicate the merits of the claim. (Doc. 13).

## II. *Discussion*

The "Great Writ" serves a unique role in the American legal system. *See Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 95, 2 L.Ed. 554 (1807) (Marshall, C.J.). It provides a means by which prisoners, in state custody pursuant to valid and enforceable judgments of state courts, may challenge the legality of their detention in the inferior courts of the federal government. 28 U.S.C. § 2254(a); *see Ex parte Royall,* 117 U.S. 241, 247–53, 6 S.Ct. 734, 29 L.Ed. 868 (1886). District courts presented with a petition for writ of habeas corpus have the authority—indeed the obligation—to overturn the judgment of a state tribunal and order the release of the prisoner when necessary to vindicate rights guaranteed under the United States Constitution. 28 U.S.C. § 2254(a); *see Brown v. Allen,* 344 U.S. 443, 482–87, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Mickens–Thomas v. Vaughn,* 355 F.3d 294, 309–10 (3d Cir.2004). No other legal process vests in federal courts such authority. *Lehman v. Lycoming County Children's Servs. Agency,* 458 U.S. 502, 513, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) ("Federal habeas involves a substantial thrust by the federal system into the sphere normally reserved to the states and hence a change in the federal-state balance.") (quoting *Sylvander v. New Eng. Home for Little Wanderers,* 584 F.2d 1103, 1111–12 (1st Cir.1978)). The Great Writ serves as a stalwart protector of individual constitutional rights but represents a significant encroachment on the sovereignty of the states.[3]

---

**3.** *Compare Bowen v. Johnston,* 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455 (1939) ("It must never be forgotten that the writ of habeas corpus is the precious safeguard of person-al liberty and there is no higher duty than to maintain it unimpaired."), *with Royall,* 117 U.S. at 251, 6 S.Ct. 734 ("The [federal] court

Jurisprudential concerns over the intrusive nature of the writ, and the desire to promote comity between the state and federal judiciaries, gave rise to a pair of related doctrines, exhaustion and procedural default, designed to accord greater deference to the adjudicatory authority of state courts. *See Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 80–81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Royall,* 117 U.S. at 253, 6 S.Ct. 734. These doctrines operate to give state courts the initial opportunity to pass on the legality of custody under federal law. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639 91 L.Ed.2d 397 (1986); *Rose v. Lundy,* 455 U.S. 509, 516, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Exhaustion requires that the prisoner invoke available state procedures for presentation of a federal claim before raising the claim in a petition for writ of habeas corpus. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Rose,* 455 U.S. at 516, 102 S.Ct. 1198. Procedural default requires the district court to reject a federal claim, even if meritorious, if previously dismissed by the state courts based on a procedural violation. *Lambrix v. Singletary,* 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Wainwright,* 433 U.S. at 78–79, 97 S.Ct. 2497. Together, these doctrines ensure that a federal court will have the ability to negate a state decision only after the state courts have had an adequate *opportunity* to hear and pass on the merits of the claim. *O'Sullivan,* 526 U.S. at 848, 119 S.Ct. 1728.

The interrelationship of these kindred doctrines has confounded the federal judi-ciary. *See, e.g., id.* at 850–51, 119 S.Ct. 1728 (Stevens, J., dissenting) (criticizing majority for "improperly commingl[ing]" the doctrines). Exhaustion may be established through default, since a procedural bar may render state remedies unavailable. *Id.* at 844–45, 119 S.Ct. 1728. Procedural default may be established through failure to exhaust, if procedural rules operate to preclude resort to state courts. *Id.* Where one doctrine ends and the other begins is a question more often posited than answered and a distinction generally emphasized but rarely clarified.

The confusion overshadowing these doctrines is evident in the briefs and report filed in this case. Barnhart contends that procedural default should be excused based on a failure to exhaust. The Board argues that the claim is unexhausted and yet focuses its argument on procedural default. The magistrate judge, cognizant that the parties veered off course, concluded that the claim is procedurally defaulted but that exhaustion cannot be excused.[4] Ships passing in the night is an apt metaphor. *See* Henry Wadsworth Longfellow, *The Theologian's Tale: Elizabeth, in* Tales of a Wayside Inn 224 (Riverside Press 1913) (1873).

To set a signal in this darkness, the court will conduct a review of each doctrine, examining its etiology and its application in this case. Following this discussion, the court will examine whether procedural default should result in dismissal or a stay of the action.

### A. *Exhaustion Doctrine*

Exhaustion arose originally as a judicial construct, to balance the need to

---

[is] not at liberty ... to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court. ...").

4. Although the court disagrees with the magistrate judge's ultimate disposition, the care and thoroughness with which he addressed a myriad of difficult issues is commended.

protect individuals from unconstitutional detentions with the desire to limit intrusions into states' adjudicatory power. *Rose*, 455 U.S. at 515, 102 S.Ct. 1198. Although now codified, the doctrine's interpretation continues to be animated by the same equitable principles from which it sprung. *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. 1728. The statutory version of the exhaustion requirement provides as follows:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c). The Supreme Court has adopted a significantly relaxed interpretation of the phrase "any available procedure." *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. 1728. It is generally unnecessary for the petitioner to resort to "extraordinary remedies," such as "a suit for injunction" or "a writ of prohibition," to satisfy the exhaustion requirement. *Id.* (quoting *Wilwording v. Swenson*, 404 U.S. 249, 249–50, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam)). Instead, the petitioner need only present the claims through an established procedural path, one that concludes with review in the high court of the state. *Id.* at 845, 119 S.Ct. 1728; *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Wilwording*, 404 U.S. at 249–50, 92 S.Ct. 407; *Brown*, 344 U.S. at 447, 73 S.Ct. 397. Once the petitioner completes one full round of the state's standard review process, the claim is considered exhausted even if alternative channels of review exist. *O'Sullivan*, 526 U.S. at 844–45, 119 S.Ct. 1728.

■ Presentation of the claim through the state judicial system for purposes of exhaustion does not require compliance with procedural rules. *Id.; Picard*

*v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir.1984); *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 892 (3d Cir.1975); *see also Castille*, 489 U.S. at 351, 109 S.Ct. 1056. The doctrine requires merely that the petitioner *present* the claim to the state courts. *Swanger*, 750 F.2d at 295; *Geisler*, 510 F.2d at 892. It mandates exposure, not actual adjudication. *See O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728. Late or untimely filings, even if insufficient under state procedural rules, satisfy the exhaustion doctrine. *Id.; Swanger*, 750 F.2d at 295; *Geisler*, 510 F.2d at 892. Direct appeal serves as the most clearly acceptable means of exhausting a claim, but presentation through other procedural paths is equally effective to meet the requirement. *See O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728; *Castille*, 489 U.S. at 351, 109 S.Ct. 1056; *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir.2000).

■ The instant case presents a rare example where an "extraordinary" remedy provides the standard means of exhaustion. Pennsylvania does not permit prisoners to challenge a denial of parole by the Board through direct appeal, but does permit collateral attack through a mandamus petition filed in the original jurisdiction of the Commonwealth Court of Pennsylvania. *See Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287, 290–94 (2001); *Rogers v. Pa. Bd. of Prob. & Parole*, 555 Pa. 285, 724 A.2d 319, 323 n. 5 (1999). An adverse ruling by the commonwealth court may, in turn, be appealed as of right to the Supreme Court of Pennsylvania. *See* 42 Pa. Cons.Stat. §§ 723(a), 761(a); *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331, 1335 n. 5 (1996). This process constitutes the standard means by which a prisoner may challenge a denial of parole, completion of which satisfies exhaustion regardless of

the potential availability of other collateral remedies. *See Mickens–Thomas v. Vaughn,* 321 F.3d 374, 376 n. 2 (3d Cir. 2003).

Through his mandamus action, Barnhart met the exhaustion requirement. He filed a petition for writ of mandamus in the commonwealth court, presenting the claim now raised in the instant habeas petition. After it was denied on the merits, he filed an appeal to the Supreme Court of Pennsylvania, presenting the same claim. That this appeal was rejected as untimely does not frustrate exhaustion. *See O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728; *Swanger,* 750 F.2d at 295. An adjudication on the merits was not required. The claim was presented to the state supreme court through the standard and appropriate procedural channel. Exhaustion is established. *See O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728; *Castille,* 489 U.S. at 351, 109 S.Ct. 1056.

### B. *Procedural Default Doctrine*

■ The same federalism and comity concerns that animate the exhaustion requirement also drive the procedural default doctrine. *Wainwright,* 433 U.S. at 78–79, 97 S.Ct. 2497; *see also Lambrix,* 520 U.S. at 523, 117 S.Ct. 1517; *Harris v. Reed,* 489 U.S. 255, 260–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Just as federal courts must decline to reach a federal issue that has not yet been presented to state courts, they must also refuse to address an issue that has been rejected by state courts based on a state procedural violation. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457

(1996); *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir.1993). Federal courts may question the judgment of state courts on issues of federal law, but not on matters of state law. *Lambrix,* 520 U.S. at 523, 117 S.Ct. 1517; *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. When a procedural default stands as an "independent and adequate" ground for denying the claim, respect for the state court's application of its own law dictates that the federal court decline to reach the federal issue, even if meritorious. *Id.; see also Lambrix,* 520 U.S. at 523, 117 S.Ct. 1517; *Harris,* 489 U.S. at 260–64, 109 S.Ct. 1038.

■ When procedural default is raised, the court must generally engage in a tripart analysis. *See, e.g., Neely v. Zimmerman,* 858 F.2d 144, 147 (3d Cir. 1988). Federal habeas relief is barred by a default if: (1) a violation of a state procedural rule did, in fact, occur; (2) the procedural rule is "adequate" to support the decision and "independent" of federal law;[5] and (3) the default cannot be excused for "cause" or due to a potential "fundamental miscarriage of justice." *See, e.g., id.* The court will address each prong in turn.

### 1. *State Procedural Default*

■ To find a procedural default, the district court must analyze the state proceedings and civil and appellate rules to determine whether the state supreme court would likely reject the claim as barred. *O'Sullivan,* 526 U.S. at 846–47, 119 S.Ct. 1728; *Castille,* 489 U.S. at 351, 109 S.Ct. 1056; *Douglas v. Horn,* 359 F.3d 257, 262 (3d Cir.2004); *Merritt v. Blaine,* 326 F.3d 157, 166 (3d Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 317, 157 L.Ed.2d 219 (2003). Obviously, this task is

---

**5.** None of the parties to the instant case assert that the procedural rule on which the state court ̖elied is not "independent" of federal law, and this aspect of the procedural default doctrine will not be examined.

simplified when the state courts have identified a particular rule as grounds for rejecting the claim. However, a federal court may find a default even in the absence of a state court decision delineating the procedural bar. *See O'Sullivan,* 526 U.S. at 846–47, 119 S.Ct. 1728. Where the claim was not presented to the state courts or was denied without explanation, the federal court may presume that a default occurred if a state procedural rule clearly bars the action. *Id.; Doctor v. Walters,* 96 F.3d 675, 680–81 (3d Cir.1996).

▋ That a procedural default occurred in this case is obvious. In quashing Barnhart's appeal, the Supreme Court of Pennsylvania cited Pennsylvania Rule of Appellate Procedure 903, which requires appeals to be taken within thirty days of the final order. *See* PA. R.APP. P. 903(a). The commonwealth court denied Barnhart's petition for writ of mandamus on November 22, 2002. Under Rule 903, an appeal was due by December 22, 2002. Barnhart did not file a notice of appeal until January 13, 2003.

▋ Despite the decision of the Supreme Court of Pennsylvania, finding his appeal barred under Rule 903, Barnhart argues that his appeal was timely based on *his* interpretation of the Pennsylvania Rules of Appellate Procedure. This contention is meritless. Default is a question of state law and the ruling of the Supreme Court of Pennsylvania is dispositive.[6] *See Castille,* 489 U.S. at 351, 109 S.Ct. 1056;

*Douglas,* 359 F.3d at 262; *Merritt,* 326 F.3d at 166.

### 2. "Adequate" State Law Ground

Default will be recognized as a bar to federal relief only when the procedural rule stands as an "adequate" ground for rejection of the claim. *Lee v. Kemna,* 534 U.S. 362, 375–76, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002); *Lambrix,* 520 U.S. at 523, 117 S.Ct. 1517; *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. If the rule is applied inconsistently, or only rarely, then the respect owed to the state court decision lessens significantly. *Wainwright,* 433 U.S. at 85–86, 97 S.Ct. 2497; *Harris,* 489 U.S. at 260–64, 109 S.Ct. 1038. In these circumstances, the federal court may overlook the procedural default and reach the underlying federal issue without improperly impinging upon the state's adjudicatory authority. *Id.; see also Lee,* 534 U.S. at 375–76, 122 S.Ct. 877.

▋ Gauging the adequacy of a state procedural rule requires an examination of the clarity of the provision and the consistency of its application. *Id.; Wainwright,* 433 U.S. at 85–86, 97 S.Ct. 2497. These considerations are usually expressed as three factors: (1) application of the procedural rule is "unmistakable," (2) the state supreme court did not address the merits of the claim,[7] and (3) judicial application of the procedural rule is consistent in similar instances. *Doctor,* 96 F.3d at 683–84; *see O'Sullivan,* 526 U.S. at 844,

---

**6.** Although inapplicable here, Barnhart's contention regarding the proper interpretation of Pennsylvania law is relevant to the "adequacy" of the state court rule, a matter controlled by federal law. *Wainwright,* 433 U.S. at 78–79, 97 S.Ct. 2497; *Neely,* 858 F.2d at 147; *see infra* Part II.B.2.

**7.** Often, this factor is phrased as whether "all state appellate courts refused to review the petitioner's claims on the merits." *Doctor,* 96

F.3d at 683–84. However, this suggests that the claim must have actually been presented to the state courts in order for a procedural default to occur. As the Supreme Court has recognized, default may be found in the absence of state court review. *O'Sullivan,* 526 U.S. at 844, 119 S.Ct. 1728; *see also Castille,* 489 U.S. at 350–51, 109 S.Ct. 1056; *Smith v. Digmon,* 434 U.S. 332, 333, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam).

119 S.Ct. 1728; *Harris,* 489 U.S. at 262, 109 S.Ct. 1038; *Wainwright,* 433 U.S. at 85–86, 97 S.Ct. 2497. A failure of any of these factors renders the procedural rule inadequate to bar habeas review. *Doctor,* 96 F.3d at 683–84.

 Pennsylvania Rule of Appellate Procedure 903 is patently applicable to Barnhart's mandamus action. Mandamus petitions challenging a denial of parole by the Board are within the original jurisdiction of the Commonwealth Court of Pennsylvania. *Coady,* 770 A.2d at 290–94. Appeals from these actions are controlled by Rule 1101, which provides that appeals "shall be taken to the Supreme Court [of Pennsylvania] in the manner prescribed in Chapter 9 (appeals from lower courts)." PA. R.APP. P. 1101(b). Under Rule 903, a notice of appeal must be filed within thirty days of the commonwealth court's decision. *Id.* 903. Contrary to Barnhart's assertion, this period is not tolled by the filing of a motion for reconsideration, a fact made unmistakably clear both by the absence of an express tolling provision in Rule 903 and by subsequent rules warning against such an assumption. *See id.* 1701 notes (stating that the "better procedure" to avoid losing appellate rights is to file a notice of appeal and motion for reconsideration at the same time). Pennsylvania rules plainly state that the period for appeal of an action brought within the original jurisdiction of the commonwealth court is thirty days from the date of the final order, regardless of an intervening motion for reconsideration.

 Barnhart's primary challenge goes to application of the rule itself. He argues that this case is not properly governed by Rules 1101 and 903, but by Rule 1113(a), which tolls the thirty-day period for filing an appeal during the pendency of a motion for reconsideration in the commonwealth court.[8] *See id.* 1113. This argument is meritless. Rule 1113 governs only petitions for allowance of appeal to the supreme court. *See id.* It does not address appeals as of right from the denial of a petition for writ of mandamus filed within the original jurisdiction of the commonwealth court. *Id.*

 Alternatively, Barnhart argues that a standing order of the supreme court vitiates the application of Rule 903. The order in question, Order No. 218, provides, in pertinent part, as follows:

> [I]n all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error.

*Id.* 1114 historical notes. Even assuming the relevancy of this order to questions of procedural default, it is plainly inapplicable here. It addresses only requests for review of orders of the superior court, not the commonwealth court. *See id.* Order No. 218 facially has no relevance to the appeal of a denial of a petition for writ of mandamus (which is not a "criminal conviction" or a "post-conviction relief matter") by the commonwealth court. *See id.; see also Burkett v. Love,* 89 F.3d 135, 137–38 (3d Cir.1996).

8. The commonwealth court denied Barnhart's claim on November 22, 2002, and denied his subsequent motion for reconsideration on December 12, 2002. Barnhart filed his notice of appeal from the decision on January 13, 2003. If the appeal period was tolled during the pendency of the reconsideration motion, meaning that it did not commence until December 12, 2002, Barnhart's notice of appeal was timely. (Thirty days from December 12, 2002, is January 11, 2003, but, because this date fell on a Saturday, the appeal period was extended until Monday, January 13, 2003. *See* 1 PA. CONS.STAT. § 1908; PA. R.APP. P. 107.)

Pennsylvania Rule of Appellate Procedure 903 speaks in unmistakable language and was applied by the state supreme court in this case to refuse to hear the merits of Barnhart's claim. Moreover, it has been applied consistently by other state tribunals. *See, e.g., In re Trust Under Deed of Green,* 2001 PA Super 186, 779 A.2d 1152, 1156–57 (2001); *see also Bond v. Fulcomer,* 864 F.2d 306, 312 (3d Cir. 1989) (discussing consistent application of Rule 903), *cited with approval in Doctor,* 96 F.3d at 678–79. Indeed, the time constraints of Rule 903 are viewed as jurisdictional, not susceptible to equitable waiver absent a "breakdown in the court's operation." *See, e.g., Commonwealth v. Coolbaugh,* 2001 PA Super 77, 770 A.2d 788, 791 (2001) (finding a "breakdown in the court's operation" when the lower court erroneously advised the litigant of the proper appeal period); *see also Green,* 779 A.2d at 1156–57. Barnhart has not cited and the court has not discovered any case in which an untimely notice of appeal was overlooked based on a mere misunderstanding of procedural requirements. *See Bond,* 864 F.2d at 312. Therefore, the court concludes that Pennsylvania appellate rules were adequate to support dismissal of Barnhart's claim.

### 3. *"Cause" or "Fundamental Miscarriage of Justice"*

When a procedural default represents an independent and adequate ground for denial of a claim, the petitioner may secure federal review only if he or she can establish "cause" for the error or the unique potential for a "fundamental miscarriage of justice" in the absence of federal court review. *Edwards,* 529 U.S. at 451, 120 S.Ct. 1587; *Murray,* 477 U.S. at 488, 106 S.Ct. 2639. Both concepts are predicated on equitable concerns. *Harris,* 489 U.S. at 260–64, 109 S.Ct. 1038; *see also Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. "Cause" requires proof that an external

factor prevented compliance with the procedural rule at issue. *Murray,* 477 U.S. at 488, 106 S.Ct. 2639; *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.), *cert. denied,* 537 U.S. 897, 123 S.Ct. 195, 154 L.Ed.2d 166 (2002). A fundamental miscarriage of justice may be found if the petitioner presents evidence of actual innocence of the underlying criminal charges. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In such a case, justice demands that the federal court overlook the procedural default and entertain the claim. *Harris,* 489 U.S. at 260–64, 109 S.Ct. 1038; *see also Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

Neither of these principles applies in this case. Barnhart failed to file a timely appeal to the Supreme Court of Pennsylvania under the erroneous assumption that his motion for reconsideration tolled the limitations period. This misinterpretation of clearly established Pennsylvania law is neither reasonable nor the result of external factors. *See Cristin,* 281 F.3d at 420 (stating that "cause" generally requires external impediment rather than mere "inadvertence" of petitioner); *Jones v. Morton,* 195 F.3d 153, 160 (3d Cir.1999) (stating that the petitioner's "misunderstanding" of appellate rights is not "cause" for procedural default). No evidence suggests that Barnhart received incorrect information regarding the appeal period from an attorney or representative of the judiciary. He apparently understood the availability of review and simply chose not to invoke it until his motion for reconsideration was denied. His decision, however unwise, is not "cause" to excuse a procedural default. *See Cristin,* 281 F.3d at 420.

The case *sub judice* also presents no risk of a fundamental miscarriage of justice. This exception is limited to truly extraordinary cases, where there is a

showing of "actual innocence" by the petitioner. *Werts v. Vaughn,* 228 F.3d 178, 193 (3d Cir.2000); *see also Schlup,* 513 U.S. at 327, 115 S.Ct. 851. Barnhart does not contest his guilt of the underlying crimes, but challenges only the denial of parole. Refusing to consider the petition could not result in a miscarriage of justice, and default will not be excused.

### C. *Dismissal or Stay*

 Procedural default bars relief but does not mandate dismissal. Rejection of a claim by a state tribunal on procedural grounds does not always foreclose other state courts from hearing the claim. *Ex parte Hawk,* 321 U.S. 114, 116, 64 S.Ct. 448, 88 L.Ed. 572 (1944) (per curiam), *quoted in Rose,* 455 U.S. at 515–17, 102 S.Ct. 1198; *Holloway v. Horn,* 355 F.3d 707, 717–18 (3d Cir.2004). These other avenues for relief are not explored in the context of exhaustion analysis, which requires only completion of the "standard" appellate process, without resort to "extraordinary" remedies. *O'Sullivan,* 526 U.S. at 844, 119 S.Ct. 1728. Thus, a claim may be considered both exhausted and procedurally defaulted even though a state court would entertain the merits of the claim.

The availability of other state court remedies creates a dilemma for federal courts. Prior to recent statutory changes, lack of exhaustion or procedural default generally resulted in dismissal without prejudice. *See Rose,* 455 U.S. at 522, 102 S.Ct. 1198; *Bond,* 864 F.2d at 312. Such action imposed no serious hardship on the petitioner, who could return to federal court with the same claim after completing habeas prerequisites in the state system. *See Rose,* 455 U.S. at 509, 522, 102 S.Ct. 1198; *Bond,* 864 F.2d at 312; *see also Crews v. Horn,* 360 F.3d 146, 150–53 (3d Cir.2004).

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub.L. No. 104–132, 110 Stat. 1218, imperils past judicial practices. *Crews,* 360 F.3d at 150–53. The AEDPA amendments to 28 U.S.C. § 2244 impose strict new limitations periods for initial and subsequent petitions for writ of habeas corpus. *Duncan v. Walker,* 533 U.S. 167, 179, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001); *Crews,* 360 F.3d at 150–53. Relief is available under these provisions only if a petition is filed in the federal system within one year of the final court judgment on the claim. 28 U.S.C. § 2244(d)(1). This period is not tolled during the pendency of federal habeas proceedings, even when the district court dismisses the claim without prejudice to allow the petitioner to exhaust state remedies.[9] *Duncan,* 533 U.S. at 181–82, 121 S.Ct. 2120; *see* 28 U.S.C. § 2244(d)(2). After one year, a petitioner is precluded from filing another federal petition. *Crews,* 360 F.3d at 150–53; *see also* 28 U.S.C. § 2244(b)(1), (d)(1); *Stewart v. Martinez–Villareal,* 523 U.S. 637, 640–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); *Jones,* 195 F.3d at 159–61. Hence, time is of the essence. With or without prejudice, dismissal often acts as a bar to subsequent petitions raising the claim.

 Courts of appeal have responded to the preclusive effect of the amendments by liberalizing the power of district judges to stay habeas actions, permitting the petitioner to return to state court and exhaust state remedies. *Crews,* 360 F.3d at 150–53 (citing *Zarvela v. Artuz,* 254 F.3d 374, 382 (2d Cir.2001)); *see also Gray,* 518 U.S. at 162, 116 S.Ct. 2074; *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). This protects the petitioner's ability to obtain federal review of valid constitutional claims and preserves

---

9. However, the period is tolled during the pendency of *state* collateral proceedings. *Duncan,* 533 U.S. at 181–82, 121 S.Ct. 2120; *see* 28 U.S.C. § 2244(d)(2).

the state courts' opportunity to adjudicate the claims in the first instance. *Crews,* 360 F.3d at 151–54; *see also Duncan,* 533 U.S. at 181–82, 121 S.Ct. 2120 (Stevens, J., concurring). When confronted with a habeas petition containing an unexhausted claim, the federal court should stay the action whenever dismissal would expose the petitioner to the limitations period of the habeas statute. *Crews,* 360 F.3d at 151–54.

 No similar rule has yet been applied to procedurally defaulted claims, but the same reasoning supports a stay in these circumstances. Both the default and exhaustion doctrines rest on principles of comity and federalism, informed by equitable interests concerning the rights of the petitioner. *Granberry v. Greer,* 481 U.S. 129, 134–35, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Rose,* 455 U.S. at 515, 102 S.Ct. 1198; *Wainwright,* 433 U.S. at 78–79, 97 S.Ct. 2497; *see also O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728. Procedural default denies state courts the first opportunity to hear a claim, but federal courts need not dismiss the petition to protect this prerogative when other state remedies remain available. If reasonable means of state review exist, the federal court should hold a procedurally defaulted claim in abeyance pending completion of those proceedings. *See Bond,* 864 F.2d at 312; *see also Crews,* 360 F.3d at 150–53.[10] Dismissal would be

an empty gesture to the state's interest at the habeas petitioner's expense.

 Dismissal of the instant case would preclude Barnhart from returning to federal court with his claim. The Board denied Barnhart's application for parole on April 24, 2002, triggering commencement of the one-year limitations period for filing a federal habeas petition.[11] *See* 28 U.S.C. § 2244(d)(1). This period was tolled during the pendency of the mandamus proceedings, which concluded on December 22, 2002, when the period for appeal to the supreme court expired. *See Carey v. Saffold,* 536 U.S. 214, 220–21, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). It was not tolled, however, by the untimely appeal, the subsequent motion for reconsideration, or the instant federal petition for writ of habeas corpus. *See Douglas,* 359 F.3d at 260–62; *Merritt,* 326 F.3d at 161–62. The AEDPA required Barnhart to file his petition by December 22, 2003. *See* 28 U.S.C. § 2244(d)(1). This date having passed, Barnhart is now barred from raising his claim in federal court through a new petition for writ of habeas corpus.

 A stay would be appropriate if Pennsylvania law offers Barnhart a collateral remedy. Specifically, the court must examine whether Barnhart "has the right under the law of the State to raise, by any available procedure, the question present-

---

10. Alternatively, the court could dismiss the petition and, upon re-filing, apply principles of equitable tolling to permit the action to proceed. *See Jones,* 195 F.3d at 159–61 (discussing equitable tolling). To the extent that this essentially pre-judges the propriety of equitable tolling in a later habeas proceeding, the court believes that a stay of the current action represents the more acceptable approach. *See Crews,* 360 F.3d at 153–54 (discussing benefits of stay of habeas action over equitable tolling); *Merritt,* 326 F.3d at 170 & n. 10 (same); *cf. Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 239 (3d Cir.1999) ("The law is clear that courts must be sparing

in their use of equitable tolling."), *quoted in Jones,* 195 F.3d at 159.

11. The one-year limitations period generally commences upon expiration of the time for seeking direct review. *See Carey v. Saffold,* 536 U.S. 214, 220–21, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *Douglas,* 359 F.3d at 260–62; *Merritt,* 326 F.3d at 161–62. However, Pennsylvania does not permit direct appeal of a denial of parole by the Board. *Coady,* 770 A.2d at 290–94. Hence, the limitations period commenced on the date of the Board's decision. *See id.*

ed." 28 U.S.C. § 2254(c); *see id.* § 2254(b); *Lines,* 208 F.3d at 162–64; *Lambert v. Blackwell,* 134 F.3d 506, 517–22 (3d Cir.1997); *see also Gray,* 518 U.S. at 162, 116 S.Ct. 2074; *Engle,* 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Of course, it is somewhat difficult to forecast how a state tribunal will react to a renewed application for relief, even in the face of a seemingly clear procedural bar. *See Wilwording,* 404 U.S. at 250, 92 S.Ct. 407 ("Whether the State would have heard petitioner's claims in any of the suggested alternative proceedings is a matter of conjecture...."). However, the mere possibility of an unexpected or aberrant decision by a state tribunal does not render the district court incapable of resolving the availability of state remedies. *Wilwording,* 404 U.S. at 250, 92 S.Ct. 407, *cited in O'Sullivan,* 526 U.S. at 844, 119 S.Ct. 1728; *Wenger v. Frank,* 266 F.3d 218, 223–24 (3d Cir.2001); *Powell v. Wyrick,* 657 F.2d 222, 224 (8th Cir.1981), *cited in Santana v. Fenton,* 685 F.2d 71, 76 n. 3 (3d Cir.1982). Indeed, the federal judiciary has extensive experience in the divination of hypothetical state court rulings. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 79–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that the Constitution requires federal courts in diversity cases to apply law of the state, as it would be interpreted by the state supreme court in the circumstances). Federal courts may rely on clearly established precedent to predict that state courts, presented with an application for relief, would refuse to entertain the claims. *O'Sullivan,* 526 U.S. at 844, 119 S.Ct. 1728; *Doctor,* 96 F.3d at 681–83; *Allen v. Attorney Gen.,* 80 F.3d 569, 573 (1st Cir.1996) ("If *stare decisis* looms ... and there is no plausible reason to believe that a replay will persuade the [state] court to reverse its field[, the federal court may consider the claims exhausted.]").

■ This is necessarily a delicate balance. *See Lines,* 208 F.3d at 164–69; *Doc-*

*tor,* 96 F.3d at 681–83; *Toulson,* 987 F.2d at 987–89. If there is any "reasonable probability" that the state courts would hear the claims, the federal court should stay the case to permit the petitioner to pursue those remedies. *Santana,* 685 F.2d at 76 n. 3 (quoting *Powell,* 657 F.2d at 224); *see Crews,* 360 F.3d at 154; *Merritt,* 326 F.3d at 170 n. 10; *see also Gray,* 518 U.S. at 162, 116 S.Ct. 2074; *Engle,* 456 U.S. at 125 n. 28, 102 S.Ct. 1558. But when state rules clearly preclude additional review the federal court has an obligation to stop the "procedural merry-go-round" and dismiss the petition. *Cruz v. Warden of Dwight Corr. Ctr.,* 907 F.2d 665, 671 (7th Cir.1990); *see also Fitzsimmons v. Yeager,* 391 F.2d 849, 857 (3d Cir.1968) (en banc) ("[L]itigants should not be sent on patently futile, circular journeys in formal search of relief which has already been determined unavailable.").

■ A stay of these proceedings to permit Barnhart to return to the state judicial system would be futile, and dismissal is appropriate. As the Third Circuit has recognized, the only avenue potentially available in Pennsylvania to pursue a denial of parole claim, other than a petition for writ of mandamus, is a petition for writ of habeas corpus. *See Coady v. Vaughn,* 251 F.3d 480, 489–90 (3d Cir.2001); *Burkett,* 89 F.3d at 142; *see also Rogers,* 724 A.2d at 322. Yet, the procedural default of a mandamus petition bars a state habeas action just as it bars federal relief. *See* 42 PA. CONS.STAT. § 6503(b) ("[T]he writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings authorized by law."). Pennsylvania courts enforce a fair presentation requirement quite similar to that imposed by federal courts in habeas actions, *see Commonwealth v. McNeil,* 445 Pa.Super. 526, 665 A.2d 1247, 1250 (1995), *cited in Doctor,* 96 F.3d at 680; *Common-*

wealth v. Wolfe, 413 Pa.Super. 583, 605 A.2d 1271, 1273 (1992), cited in Doctor, 96 F.3d at 680; Commonwealth ex rel. Wardrop v. Warden, State Corr. Inst. at Dallas, 237 Pa.Super. 502, 352 A.2d 88, 89–90 (1975), cited in Hankins v. Fulcomer, 941 F.2d 246, 251 n. 10 (3d Cir.1991), and they have consistently held that procedural default, during direct review or collateral proceedings, bars a subsequent state habeas petition raising the claim, see, e.g., Commonwealth v. O'Brian, 2002 PA Super 372, 811 A.2d 1068, 1070–71 (2002); Moore v. Roth, 231 Pa.Super. 464, 331 A.2d 509, 510 (1974). Barnhart's failure to file a timely notice of appeal of the commonwealth court order precludes review of his denial of parole claim in a state petition for writ of habeas corpus.[12]

 Futility of one remedial path does not, of course, foreclose others. See Hawk, 321 U.S. at 116, 64 S.Ct. 448. Indeed, the undefinable panoply of procedural devices available in judicial proceedings ensures that, for each potential means of relief found to be precluded, two more will arise. See Wilwording, 404 U.S. at 250, 92 S.Ct. 407; Allen, 80 F.3d at 573. But the district court need not slay this Hydra. So long as the petitioner is accorded a reasonable opportunity to invoke standard channels of direct and collateral state court review, dismissal of a procedurally defaulted petition is appropriate and works no injustice against the rights of the vigilant to secure habeas relief. See O'Sullivan, 526 U.S. at 844, 119 S.Ct. 1728; Crews, 360 F.3d at 150–53. The district court need not and should not perpetuate an endless cycle of procedural maneuverings in the state and federal judiciaries. Fitzsimmons, 391 F.2d at 857; Allen, 80 F.3d at 573; see also Barefoot v. Estelle, 463 U.S. 880, 888–89, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). The Great Writ follows the rule that litigation must come to an end.

---

**12.** Even if Barnhart could somehow circumvent the requirement of fair presentation, the court has doubts regarding the availability of state habeas relief. The Supreme Court of Pennsylvania has previously held that a petition for writ of habeas corpus may not be used to challenge a denial of parole. Commonwealth ex rel. Biglow v. Ashe, 348 Pa. 409, 35 A.2d 340, 341 (1944). Although the scope of this holding has recently been questioned by several justices of the supreme court, see, e.g., Coady, 770 A.2d at 290–94 (Castille, J., concurring), and by the Third Circuit, see, e.g., Burkett, 89 F.3d at 142, no state court has expressly overruled or limited the decision, see, e.g., Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688, 692 (2002) (plurality opinion) ("[W]e leave for another day the question of the propriety of habeas corpus as a remedy."); cf. Coady, 770 A.2d at 288–90 (holding that mandamus is "the proper method" for review of a claim of unconstitutional denial of parole without discussing possibility of habeas relief). Indeed, both the commonwealth and superior courts have recently rejected habeas petitions challenging a denial of parole. See Borsello v. Colleran, 833 A.2d 1213, 1214–15 (Pa. Cmwlth.2003); Commonwealth v. O'Brian, 2002 PA Super 372, 811 A.2d 1068, 1070–71 (2002); see also 18 STANDARD PENNSYLVANIA PRACTICE 2d § 98:53 (West 1998) ("Habeas corpus may not be used, by one legally confined, to review a decision of the parole board denying such person a parole...."). This conclusion seems justified in light of the presence of mandamus as an available remedy, see Commonwealth v. Vladyka, 425 Pa. 603, 229 A.2d 920, 922 (1967) (stating that "aspect[s] of habeas corpus" may be "subsumed" in mandamus); see also Commonwealth v. Peterkin, 554 Pa. 547, 722 A.2d 638, 640 (1998) (stating that the writ of habeas corpus is "subsume[d]" by other remedies and "continues to exist only in cases in which there is no remedy"), and the traditional limitation on habeas relief to circumstances in which the legality of the sentence itself, not discretionary decisions concerning length of custody, is at issue, see Winklespecht, 813 A.2d at 694–95 (Saylor, J., concurring and dissenting); Pa. Dep't of Corr. v. Reese, 774 A.2d 1255, 1260–61 (2001); Wolfe, 605 A.2d at 1274; Com. v. Bookbinder, 213 Pa.Super. 335, 247 A.2d 644, 646 (1968).

That time has come in this case. Standard review channels were open to Barnhart, but are now closed by his procedural default. No reasonably apparent procedure remains available by which Barnhart can secure state court consideration of the merits of his claim. The petition for writ of habeas corpus will be dismissed with prejudice.

An appropriate order will issue.

## ORDER

AND NOW, this 21st day of May, 2004, upon consideration of the report and recommendation of the magistrate judge (Doc. 13), and the objections thereto (Doc. 14), and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1. The recommendation of the magistrate judge (Doc. 13) is ADOPTED except as modified in the accompanying memorandum.

2. The petition for writ of habeas corpus (Doc. 1) is DISMISSED with prejudice.

3. A certificate of appealability is DENIED.

4. The Clerk of Court is directed to CLOSE this file.